SUCCESSION OF
RENNEBERG.

## ELAM BOWMAN *v.* MCELROY & BRADFORD.

The right to intervene by way of third opposition is a privilege granted by law which the court cannot refuse when the right is legally exercised.

Where a judgment has been rendered, declaring the sale made by a debtor of his property to be simulated, the record and judgment will be received as full and conclusive proof of simulation.

In an opposition by a third party, to regulate the effect of a seizure in what relates to himself, he is bound to assert all his pretensions at the same time; and the judgment of the court in such proceeding, determining the rights of the creditors growing out of the seizure, cannot afterwards be disturbed on a new claim set up by such third opponent.

Where one of the parties to a suit has more means of knowledge concerning a matter to be proved than the other, the onus is on him.

APPEAL from the District Court of the Parish of Tensas, *Farrar*, J. *Julius Aroni*, for opponents and appellants. *F. H. Farrar*, and *G. S. Sawyer*, for defendant.

DUFFEL, J. On the 18th of December, 1855, *James R. Bisland*, sold to one *James M. Motlow*, fifty eight slaves, who then constituted the whole property of the vendor; and the said *Motlow* conveyed those slaves to one *Elam Bowman*, on the 27th of March, 1856.

The above sales and conveyances were, at the suit of certain mortgage creditors of *James R. Bisland*, declared, by a judgment of this court, reported in 14 An. p. 587 et seq., to be simulated, null, void and without effect, as to said mortgage creditors, whose claims were recognized in the judgment. This judgment also ordered the seizure and sale of said slaves, and fixed the rank of the creditors. The third opponents, *D. S. & T. A. Bisland*, pleaded all the above matters and proceedings, made all the parties to the original suit, as also the Sheriff, defendants herein, and asked to be, contradictorily with them, recognized as mortgage creditors of *James R. Bisland* on fourteen of the above slaves, and to share in the proceeds of their sale.

The claims of these third opponents are resisted on various grounds, some of which relate to the form of action, and others to the substance, or nature of the debt.

The judgment of the lower court was one of non-suit, and the appellees ask for an absolute judgment against the third opponents.

We think in the first place that one, at least, of the opponents, *T. A. Bisland*, had a right to intervene as he did, by way of third opposition : it is a privilege granted by law and which cannot be refused when legally exercised. C. P. 395 & 401; *Manuel Vidal* v. *The Ocean Insurance Company*, 5 R. 68; *Nancy B. Fulton* v. *Joel C. Fulton*, 7 R. 73.

The third opponents do not, and could not, after the final judgment of this court, pretend to disturb the rank assigned to the creditors by that judgment, their ranks, as between them, is finally determined. The case is however very different with regard to the other third opponent, *D. S. Bisland*, for we see that

BOWMAN
v.
MCELROY.

he was a party to the first proceedings; he was therefore bound to assert all his pretentions at the same time, and besides he is excluded, in express terms, by the Article C. P. 395.

We think in the next place, that when there is a solemn judgment, declaring a transfer simulated, that the property thus fictitiously conveyed, remains, to all intents and proposes, the common pledge of the defrauded creditors; and therefore our courts will not impose on such creditors, the trouble, expense, and delay of a formal action *en déclaration de simulation*, but will when, as in this case, all the parties in interest are brought in court, and when such matters are pleaded, receive, as full and conclusive proof of simulation, the record and judgment decreeing the nullity, or non-existence, of the sale.

It appears that on the 12th day of March, 1853, *James R. Bisland, D. S. Bisland* and *Thomas A. Bisland*, gave to *Curry & Person*, a special mortgage on certain landed property and slaves in Louisiana to secure the payment of twelve thousand dollars, " for money advanced and to be advanced, supplies furnished and to be furnished, and acceptances made and to be made, " during the current year or in a reasonable period thereafter. On the same day, the said *James R. Bisland* gave to the said *D. S. & T. A. Bisland*, a mortgage on his Languedoc plantation, in the State of Mississippi and fifteen slaves, to secure them against any liability under the above mortgage granted as aforesaid to *Curry & Person*.

On the 4th of January, 1854, the said *James R. Bisland* sold to the said *D. S. Bisland*, his Languedoc plantation for ten thousand dollars cash.

A consent judgment was rendered on the 29th of December, 1855, by the Vice Chancery Court of the State of Mississippi, ordering the said *James R. Bisland* to pay to the said *D. S. & T. A. Bisland*, as a full indemnity under the above mortgage acts, $5044 82, with 8 per cent. interest from 27th December, 1855, and costs, and ordering the sale of the fifteen slaves mortgaged as aforesaid to satisfy the judgment.

The third opponents rest their claim on the above judgment. These opponents were, under the pleadings, bound to show, by other evidence than the admissions of *James R. Bisland*, the reality of their claim; this requisite would have been enjoined had such a judgment been rendered by one of our State courts, and we see no good reason to give more credence to a foreign judgment. It was within the power of the opponents to adduce proof, by the testimony of *Curry & Person* and the production of receipts &c., and as they had more means of knowledge, the *onus* was on them. *Union Bank of Louisiana* v. *Marin*, 3 An. 34; *Serapurn* v. *Lacroix*, 1 L. 379, 8 L. 197; *Adams* v. *His creditors*, 14 L. 455; Greenleaf on evidence, Vol. 1, § 79.

When we add to the above reasons, the facts that it is not stated that the property mortgaged to *Curry & Person* has been exhausted on their mortgage, that one of the opponents acquired the Languedoc plantation for cash, and that he did not assert his claim when he well knew that other parties were endeavoring to enforce their mortgages on those very slaves, we feel no hesitancy in holding that the third opponents are entitled to no share in the proceeds of the sale of the above mentioned slaves, and our judgment will therefore be in accordance with the prayer of the appellees.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed, and that ours be against the third opponents, *Douglass S. Bisland* and *Thomas A. Bisland*, rejecting their demand at their costs in both courts.