### NORRIS *et al.* v. UNITED STATES.

*(Circuit Court, W. D. Louisiana. January 5, 1891.)*

1. ACTION FOR TIMBER CUT ON PUBLIC LAND—BURDEN OF PROOF.
   Where, in an action by the United States to recover the value of logs cut on public land, the plaintiff's evidence shows that the defendant purchased from the trespasser and converted to his own use a large number of logs, among which were some of those cut from the public land, the burden is on the defendant to show that all the logs so bought by him were not so cut.

2. CONFUSION OF GOODS.
   Where the logs so cut were mixed in the river with a large quantity of other logs, so that the identical logs could not be conveniently separated, the United States thereby acquired a proportionate interest in the entire mass of logs, under Rev. Civil Code La. art. 528, which provides that, "when a thing has been formed by a mixture of materials belonging to different proprietors, * * * if the materials cannot be separated without inconvenience, their owners acquire in common the *pro rata* of the thing."

At Law. Error to district court.

*J. L. Bradford*, for plaintiffs in error.

*M. C. Elstner*, U. S. Atty., for defendant in error.

PARDEE, J. The United States brought suit in the district court for this district against the defendant Mrs. Norris, as executrix of Mrs. Matilda Jones, for the sum of $1,507, with legal interest from judicial demand for the manufactured value of certain logs unlawfully and tortiously cut and removed during the summer and fall of 1884 by one George Airhart, in Calcasieu parish, a knowing and willful trespasser upon public lands of the United States, which said logs cut and removed were by said Airhart sold and delivered to the said Mrs. Jones, and by her converted to her own use. The petition charged that Mrs.

Norris was liable as executrix of Mrs. Jones, and individually as one of the heirs of Mrs. Jones. The defendant appeared, and filed exceptions to the plaintiff's petition: (1) That, as she was sued as one of the heirs of Matilda B. Jones, the other co-heirs should be joined as the defendants; (2) that as executrix of Mrs. Matilda B. Jones, if liable at all, [all of which was denied,] she, the said executrix, is only bound to make civil reparation for the same, and is not bound for punitive damages. Thereafter the court ordered "that the exceptions filed herein in behalf of defendants stand as an answer." A jury being impaneled, the cause was heard and submitted, the jury finding a special verdict as follows:

"We find special facts that 300 logs were cut by Airhart from public lands as a trespasser; that besides this 300 logs he cut 300 from his own land; that he put the 600 into the river; that Norris, the defendant, bought five hundred and forty of said 600logs from Airhart; that Norris paid Airhart $520 for the logs (540) bought from him; that $520 was paid for the whole of the logs, and Airhart received from Norris, defendant, one-half of the $520.00 for logs cut by Airhart as a trespasser, and is liable therefor to plaintiff; that the 300 logs cut by Airhart as a trespasser, 270 of which reached Norris, defendant, and which were paid for by him, averaged 225 feet to the log, worth five dollars per thousand, and 50c. stumpage for 135 trees; that Norris in purchasing from Airhart was in good faith."

Thereupon the court rendered judgment in favor of the plaintiff, and against the defendant, the executrix, in the sum of $243, with legal interest from May 13, 1887, until paid, and all costs of suit. The amount of the judgment seems to have been arrived at by calculating the number of feet in 270 logs at 225 feet to the log, and then by allowing $4 per thousand as the value for which defendant was responsible. If the verdict had been followed, the judgment should have been, in one aspect, for $260, the amount which Norris paid for the logs, and for which the verdict says the defendant is liable, or for the sum of $303.75, the actual value of the timber converted, at $5 per thousand, as found by the jury. This error, however, if error it be, is one in favor of the appellant, and she cannot complain thereof.

On the trial of the case the court charged the jury as follows:

"That if the jury are satisfied from the evidence that the logs, or any part thereof, alleged in the petition to have been sold and delivered to defendant or her agent, were, without any fault or act of hers or her agent, and before the same came into his or her possession and control, mixed up in a large mass of other logs of several thousand in number in such a way that the identical logs described in such petition could not be conveniently separated from the mass, and that defendant, after such admixture, purchased and received delivery of such a portion of the mass as had by the several owners thereof been set apart as equivalent to the pro rata interest therein of George Airhart, then they should find for the government for the number of logs thus taken out of the mass by defendant, unless she can show by satisfactory evidence that such number did not contain any part of the logs described in petition as cut from the particular lands therein set forth."

To which charge the defendant excepted, and reserved a bill of exceptions, and the defendant requested the court to charge—

"That if the jury are satisfied from the evidence that the logs or any part thereof, alleged by the petition to have been sold and delivered to the defendant or her agent, were, without any fault or act of hers or her agents, and before coming into her or her agents' possession and control, mixed up with a mass of other logs of several thousand in number in such a way that the identical logs described in the petition could not conveniently be separated from the mass, and that defendant, after such admixture, purchased and received delivery of such a portion of said mass as had by the several owners thereof been set apart as equivalent to the *pro rata* interest therein of George Airhart, then they should find only against the defendant for the number of logs thus delivered to defendant out of the general mass which the evidence shows were actually cut and removed from the lands described in petition."

Which charge, as requested, the court refused to give, and the defendant excepted to such refusal and reserved a bill of exceptions.

The defendant prosecutes this writ of error, and assigns as error the charge as given, and the refusal of the court to charge as requested. Appended to the bills of exceptions is the following statement by the court:

"In this case it was shown by the evidence, not in any way contradicted by the defendant, that George Airhart cut from public lands, as a trespasser thereon, a number of logs; that he put all the logs so cut in the river, and in the usual way they were floated in small cribs or single logs a distance below, where a man employed, not as agent of any one, in the business of collecting and booming timber, caught the logs so cut by Airhart, and a large lot of other logs, and boomed them together. The same man put all the logs, several thousand in number, indiscriminately into cribs or blocks of logs, putting some logs of one brand with some of another brand into the same crib. Then the defendant Norris became a purchaser of a number of these cribs of timber, and in settlement for the number purchased by him he paid Airhart for the number of logs or feet of timber which he had, as was not denied, put into the river. The logs purchased by the defendant were all, each of them, branded in the mark of their respective owners. It was shown that the man who boomed the several thousand logs and cribbed them kept a list of the different brands in each crib. This list was kept by him in the interest of the purchasers and owners of the logs. It was shown, too, without dispute, that when the man had finished putting all the logs in the cribs, the several different owners of the logs agreed among themselves, instead of claiming the logs of their respective brands, to take logs in the cribs showing sufficient feet in timber to satisfy their claims or shares in the whole number of logs so boomed and cribbed. On this undisputed showing the court charged that the plaintiff should recover for the whole number of logs put in the river by Airhart as a trespasser on public lands, because defendant paid him (Airhart) for that number of logs; and, if defendant did not, as a fact, get any of the particular logs so cut by Airhart, it was within his power, and it was incumbent upon him, to show how many he did get."

Counsel for appellant complains that the effect of the charge as given is to relieve the plaintiff from the consequences of a plain failure to follow his property by competent evidence into the possession of the defendant, and to allow the plaintiff to eke out his case by requiring the defendant to prove affirmatively that the certain logs he did receive were not the logs unlawfully taken from the plaintiff by a third party.

The plaintiffs' right to recover against the defendant is based upon the proposition that their property came to the possession of Mrs. Jones,

and was converted by her to her own use. As it is not charged that Mrs. Jones was a trespasser, the defendant cannot be liable simply because Mrs. Jones bought and paid for the plaintiffs' property. She must have also received it and converted it.

The charges given and refused are based upon the proposition, and it seems to be supported by the evidence as stated, that the logs claimed by the United States had been mixed up in a large mass of other logs, of several thousand in number, in such a way that the identical logs claimed by the United States could not be conveniently separated. The defendant bought a number of these cribs. It is a fair inference that in the cribs were some of the identical logs belonging to the government. In the nature of things, the plaintiffs could not prove how many of those logs actually came to the defendant's possession. According to the statement of the court, it was within the power of the defendant to show how many of the identical logs claimed by the United States came into Mrs. Jones' possession. The statement of evidence shows that the information was kept in the interest of the purchasers, and therefore the court says "it is a matter peculiarly within defendant's knowledge." Wharton in his work on Evidence, (volume 1, § 367,) says: "It has been sometimes said that, when a fact is peculiarly within the knowledge of the party, the burden is on him to prove such fact, whether the proposition be affirmative or negative." In *Ford* v. *Simmons*, 13 La. Ann. 397, the supreme court of the state of Louisiana holds: "The *onus probandi* lies upon a party who is obliged to free himself from liability by proving a fact, when the knowledge of it is supposed to be more within his reach than that of his adversary." In *Bowman* v. *McElroy*, 15 La. Ann. 663, the same court lays down the rule: "Where one of the parties to a suit has more means of knowledge concerning the matter to be proved than the other, the *onus* is on him;" citing, among other authorities, 1 Greenl. Ev. § 79. From an examination of the above and other authorities, I am of the opinion that in cases like the present the plaintiffs must make out a case of liability on the part of the defendant, and then, if the exact extent of the liability depends upon evidence not within plaintiffs' power to produce, but peculiarly within the defendant's, the ruling putting the burden on the defendant may be cautiously applied. In this case the plaintiffs show, by a presumption fairly arising from the facts proved, that a part of their property came to defendant's possession, and was converted. They failed to show exactly the extent of the possession and conversion, but they show that defendant bought and paid for the whole amount in controversy. In this state of the proof, it seems as though the application of the rule in question would work very little if any hardship to the defendant.

I am of the opinion, however, that the charge complained of has other grounds to support it. It is heretofore shown that the basis of the judge's charge was that the logs of the United States had been mingled indiscriminately with a mass of other logs, of several thousand in number, in such a way that the identical logs could not be conveniently separated. Under such a state of facts, the law of Louisiana provides as follows:

"When a thing has been formed by a mixture of other materials belonging to different proprietors, neither of which can be considered as the principal substance, if the materials can be separated, the proprietor, without whose consent the mixture was made, may demand the separation. If the materials cannot be separated without inconvenience, their owners acquire in common the *pro rata* of the thing in proportion to the quantity, quality, and value of the materials belonging to each of them." Rev. Civil Code, art. 528.

Under this article, after the logs of the United States were commingled with those of other log-owners, so that the materials of the mass could not be separated without inconvenience, the United States acquired, in common with the other log-owners, the *pro rata* ownership of the mass. The evidence shows that by agreement this same *pro rata* ownership was allowed to Airhart, the trespasser, and that this same share was sold to defendant's testatrix, and was received and converted by her. It was for this share that the charge held the defendant liable. The suit is one in which the United States are following their property practically stolen from them, and they have the right to follow it through all the changes it went through, as long as identity was possible.

Upon consideration of the whole case, this court is not prepared to hold that there was error in the charge given, or in the refusal to charge as requested. The judgment of the district court will be affirmed, with costs; and it is so ordered.