WEAKS SUPPLY CO., Limited, v. WERDIN et al. (M. KAPLAN & SON, Intervener).*

No. 4814.

Court of Appeal of Louisiana. Second Circuit.

May 4, 1934.

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, for appellant.

Madison, Madison & Fuller, of Monroe, for appellee.

TALIAFERRO, Judge.

This case was remanded by us to the lower court for the purpose of receiving evidence to establish the date on which M. Kaplan & Son, intervener, reduced the monthly rent on the building leased by them to Isaac R. Kalil; the lease thereof having been assigned by him to defendants, F. R. Kalil and A. E. Werdin. (La. App.) 147 So. 838.

We held originally that, as said lease had no conventional term for its duration, it was necessarily, in view of article 2685, Civil Code, by the month, and that its existence was continued from month to month by tacit reconduction, which, in effect, did not constitute a new lease, but simply prolonged the life of the original lease contract. We also held that the continuity of the original lease as reconducted ceased when the lessor reduced the monthly rental, and for all legal and practical purposes, from that date, a new contract of lease existed between the lessor and lessee. Because of this holding, it became necessary to know definitely when the rent was reduced, and, as the original record was silent on the point, the case was remanded to afford opportunity to introduce testimony thereon. The case is now before us with the evidence offered by plaintiff and intervener on said question.

The lower court held that the rent was reduced subsequent to the filing and recording of plaintiff's chattel mortgage, and ordered the sheriff to pay over to plaintiff the proceeds of sale of the mortgaged chattels held by him under the court's order.

Intervener prosecutes appeal from this judgment.

Isaac R. Kalil sold the business conducted by him in the building leased by him from M. Kaplan & Son, intervener, and assigned his lease thereof to F. R. Kalil and A. E. Werdin on December 19, 1930. The chattel mortgage given by these vendees, now owned by plaintiff, was executed and recorded on this same day. The mortgaged chattels were then located in the building. Mr. Joseph Guerriero, member of the Monroe bar, prepared the chattel mortgage in question and contracts necessary to close the trade between these three parties. He testified that these purchasers refused to sign the papers to close the sale when he advised them that intervener had informed him over the 'phone that the rent for December was $113.50, they being unwilling to pay so large an amount of rent, and that he then advised them to see intervener and discuss the matter personally, which they did. They returned from the interview and signed the papers; the inference being that intervener had agreed to reduce the rent for the future. Mr. Guerriero further testified that F. R. Kalil gave him an account to collect fom the Lotus Club of Monroe, in the early part of March, 1931, and that Kalil told him that intervener was worrying him about the March rent on the building, and that he desired to pay this rent from the collection of said account; that one of the Kaplans came to see him about the matter, and

instructed him to hold out $80 from the collection to pay the March rent; that, when he made the collection, the $80 was delivered to Mr. Kalil to pay over to Kaplan & Son. Isaac R. Kalil testified that his brother, F. R. Kalil, borrowed $30 from him in February, 1931, to supplement $50 he had, to pay that month's rent.

This testimony makes out a prima facie case in favor of plaintiff's contention that the rent price was reduced after the chattel mortgage was recorded, and not before that date. It certainly threw upon intervener the duty of introducing evidence sufficient to overcome plaintiff's case as thus proven, if such were possible. This was not done. Mr. Dave Kaplan, member of the intervener firm, while admitting the rent was reduced to $80 per month, could not fix the date it was so reduced. He could not recall the conversation Mr. Guerriero had with one of the members of his firm in March, 1931, about the rent of that month. He also testified that he did not know if his firm kept any books of account or records to show the status of rent collections from the several tenants of urban property owned by the firm or its members. He was unable to tell the court the amount of rent due by and collected from defendants for the month of April, 1931, notwithstanding his firm, on August 1, 1931, in the city court of Monroe, filed suit against these defendants for balance of $40 on rent of the month of May, and for $80 for each of the months of June, July, and August of that year, and obtained judgment therefor. This witness signed the affidavit attached to the petition in that suit. It is this rent that intervener now opposes to the mortgage claim of plaintiff. Intervener's bookkeeper testified that no record was kept to disclose rent collections on each piece of leased property. He stated positively the company's books would not reveal when the rent was reduced in the present case, and he had no independent recollection thereof, though he kept the books of account and records of intervener during the years 1930 and 1931. In the course of his testimony he stated that "when a piece of property gets in arrears we put it on a piece of paper to keep up with it, and until it is we don't bother with it." This testimony reveals an unusual and a novel method of keeping track of collections of rent from many parcels of valuable city property, and it is difficult to conceive why such a lack of system could or would be resorted to when an adequate and efficient system would be simple and free of complications.

At the time of trial, neither defendant could be located. Therefore their testimony was not available to either side.

■ The facts pertinent to the date of reduction of the rent by intervener were peculiarly within its knowledge. It was a party to the change in this material feature of the contract of lease, and had more means of knowledge of the exact time of such change than did plaintiff. Under these circumstances, the onus was upon it to make certain that which was otherwise uncertain, and especially is this true where the opposite side has made out a prima facie case on this issue of fact.

"When one of the parties to a suit has more means of knowledge concerning a matter to be proved than another, the onus is on him." Spyker v. International Paper Co., 173 La. 580, 138 So. 109, 111; Bastrop State Bank v. Levy, 106 La. 586, 591, 31 So. 164; Lovell v. Payne, 30 La. Ann. 511; Bowman v. McElroy & Bradford, 15 La. Ann. 663; Rousseau v. Texas & Pacific Railway Co. et al., 4 La. App. 691, 698.

■ It is not absolutely necessary to definitely fix the date when the rent was reduced by intervener if it is established that the reduction was made at a time beyond which rent has been paid. Intervener sues for rent for half of May, all of June, July, and August, 1931. It is shown that the rent of March was $80, and that it was paid. If any rent had been due prior to May, 1931, it would have been sued for by intervener. Therefore it conclusively appears that all rent, except that sued for by intervener, has been paid. This being true, and the reduction of the rent having been made prior to May, 1931, at a time when plaintiff's mortgage was in full force and effect, it follows that the mortgage primes the rent privilege relied upon by intervener, and that the judgment of the lower court is correct.

■ Counsel for intervener objected to the introduction of any testimony offered to establish the fact of reduction of rent by intervener, and date thereof, on the ground that such was inadmissible under the pleadings, and urges the point here. We think the ruling of the court below, admitting such testimony, correct. Intervener specifically alleged that its "lessor's lien and privilege is prior to and ranks ahead of the lien and privilege claimed by plaintiff," and plaintiff specifically denied these allegations. The issue vel non of the rank of the respective preference rights and claims of the parties was clearly tendered by this part of their pleadings. Any

380

testimony that established, or tended to establish, the changing, modifying, or altering of the status of the lessor's lien and privilege, was admissible thereunder. To show that one lease had been, in legal effect, abolished and another substituted therefor, while the mortgage was of record, clearly was permissible in these circumstances.

The judgment appealed from is affirmed, with costs.