KENNON, Judge.
On November 16, 1948, Louis K. Mc-Guffin, H. Burford McGuffin and Miriam McGuffin West, owners of the' premises at 618 Marshall Street, Shreveport, Louisiana filed suit against W. T. Barkett, lessee of the premises. Plaintiffs set forth that an original act of lease provided a monthly rental of $250 per month during the year 1947 and $275 per month during the year *196 1948, but that in January, 1948, the written lease was amended by verbal agreement to provide a inonthly rental of $325 per month; that by further agreement the monthly rental was reduced about the first of March, 1948 to $300 per month. The consideration for'the’increase in rental being the abro-' gation by the lessors of the restriction in the lease prohibiting the sale of alcohol other than beer.
The petition recited that the sum of $110 had not been paid on the June, 1948 rent and that $300 was due for each of the months of July, August, September, October and November, 1948, making a total of $1,-610 past due, with 10% attorney’s fees.
Barkett made ho appearance and on December 8, 1948, judgment was rendered in the First District Court for Caddo Parish in favor of plaintiffs, for the full amount sued for. The judgment further directed the sale of- the furniture and fixtures contained in the leased premises and recognized plaintiffs’ rights, under their lessor’s lien, to be paid by preference.
On January 11, 1949, the Pioneer Bank & Trust Company filed a petition of intervention in which it set forth that it was the owner of a chattel mortgage note signed by Barkett upon which there was a balance due of $1,445; that the note was secured by and identified with a chattel mortgage covering fourteen listed items located in the premises leased by Barkett from plaintiffs; that the chattel mortgage had been duly recorded in the chattel mortgage records of Caddo Parish, and prayed that the Sheriff be ordered to make a separate appraisement and sale of the property so mortgaged and that there be judgment in favor of the inter-venor against Barkett for the amount of its note, and against plaintiffs recognizing the chattel mortgag-e debt and lien to be superior in rank to the lessor’s lien and privilege asserted by plaintiffs in the original suit.
An exception of no cause of action filed by plaintiffs was overruled. The original plaintiffs then filed a general denial, praying that the demands of the intervenor be rejected.
The District Court granted the interven- or’s request for separate sale and appraisement, but after trial, rejected intervenor’s claim, holding that plaintiffs’ lease was in effect at the time the chattel mortgage was recorded and therefore was superior in rank. From this judgment, intervenor has appealed. . ,
The defendant has not appealed from either judgment and the sole issue presented to us is whether the lessors or the mortgagee is entitled to the proceeds from the sale of property covered by the mortgage and contained in the leased premises.
When defendant Barkett began to occupy the premises — some four or five years prior to 1948 — there was no written lease or specific term provided in the agreement. He testified that he paid rent of $115 per month in the beginning, which was steadily advanced and that in 1947, he was paying a rental of $275 per month.
Attached to plaintiffs’ petition is a lease (Form No. 71 — Rev. 4-39 — Rent Lease, sold by M. L. Bath Co., Ltd., Shreveport, La.). At the top of the front page is typed the word “copy.” The document is undated, the filled in spaces indicating that the agreement is between plaintiffs and Willie Bar-kett, covering the premises at 618 Marshall Street for a period of two years beginning January 1, 1947, the consideration being a rental of $250 per month during 1947 and $275 per month during 1948, with a further proviso that no alcohol other than beer should be sold on the premises during the term of the lease.
Plaintiffs’ own petition recites that the original consideration of $275 per month for the year 1948 was changed by verbal agreement between lessors and lessee to $325 per month on January 1, 1948, the consideration of the increase being the abrogation by the lessors of the restriction against the sale of alcohol other than beer. The petition also stated that there was a further agreement on March 1, 1948 to again change the monthly rental, this time to $300 per month.
On the trial of the intervention, it was conceded by plaintiffs that the lease at *197 tached to their petition was not executed between the parties at the timé of the commencement of the recited term, January 1, 1947. Only one of the plaintiffs took the witness stand. He testified that his brother had delivered a copy of the proposed lease to defendant Barkett some time in 1947, the first part of March, to the best of his memory, and that despite his efforts over the months, Barkett had never returned this original and that finally, after many unsuccessful efforts to get the lease form, which his brother had delivered to Barkett, he himself had typed out the undated document attached to the petition. He could not recall at what time this form was executed. The uncertainty of his recollection as to when this lease form, attached to the petition, was executed, is indicated from .the following extract of his testimony :
“Q. Mr. McGuffin, when, to the best of your memory, did you get this copy? A. Copy of which?
“Q. This lease that is attached to the petition ? A. The copy of the lease ?
“Q. Yes, sir? A. The copy of the lease — let me see — this is it. Now, just when I don’t know, but this I will say: It was months after the real lease had been entered into, and I had tried time after time to get Willie to bring it up to the cafe from the house, and it was months after, but as to what month I can’t say.”
Later in his testimony he was asked whether this form was typed up in 1948. His answer was, “As to just when it was, I can’t say.”
W. T. Barkett, defendant, was called as a witness by intervenor and testified that he didn’t have any lease prior to 1948; that his payments during 1947 were $250 per month under a verbal lease. He admitted that he had, during 1948, a lease in his possession which had been signed by one of the plaintiffs, which he kept in his cafe for awhile and later carried home. Barkett was not asked whether he had signed this lease or not and the plaintiff who had delivered the form to him was not called as a witness. Defendant Barkett testified that the lease contract attached to plaintiffs’ petition was signed “the last part of 1948” when one of the plaintiffs told him that he would “seize everything you (Barkett) have here and appoint you as keeper.”
A certified copy of the note and chattel mortgage sued upon by intervenor is contained in the record., This mortgage was filed for record in Caddo Parish in August, 1947. The judgment which plaintiffs have obtained against Barkett was for rent during the months of June to November, 1948, inclusive.
Plaintiffs’ contention is that the rent past due for these months was under a lease entered into between plaintiffs and Barkett in January, and not later than March, 1947. l’ntervenor’s contention is that no lease was executed until 1948 and that consequently, their chattel mortgage, recorded in 1947, is superior in rank. In-tervenor makes the further contention that, granting that there was a lease in effect covering 1947 and 1948, same came to an end, and a new one was begun when the price was changed from $275. to $325 in January, 1948 and again in March, 1948, when the monthly rental was by agreement changed to $300.
Our conclusion is that Barkett’s occupancy of the premises in August, 1947, when intervenor’s chattel mortgage was recorded, and prior thereto, was on a month to month basis. Accepting the testimony of plaintiff, Louis K. McGuffin, that a lease covering a two year period was delivered by McGuffin’s brother to Barkett at his cafe about March, 1947, we still have no proof that such a lease was ever signed by Barkett as McGuffin’s brother was not placed on the stand, and there was no testimony from Barkett that he ever signed such a lease. The only plaintiff who took the witness stand, Louis K. McGuffin, testified that Barkett had never given the copy back. Under these circumstances, we find as a fact that in August, 1947, no lease was in existence for a two year term as contended by lessors.
*198 'Under our appreciation of the Louisiana law, our decision would be the same whether Barkett’s occupancy in August, 1947 (when the chattel mortgage was recorded) was by virtue of a term lease as set forth in plaintiffs’ original petition, or under a month to month arrangement as contended by intervenor and testified to by Barkett. The relative rank of a lessor’s lien and a recorded chattel mortgage covering property located in the leased premises is discussed in the following cases: Youree et al. v. Limerick, 157 La. 39, 101 So. 864, 37 A.L.R. 394; Comegys v. Shreveport Kandy Kitchen, 162 La. 103, 110 So. 104, 52 A.L.R. 931; Bernhardt v. Sandel, 3 La.App. 139; Kidd v. Terrel, La.App., 145 So. 23; Thigpen v. Wall Printing Corporation, Inc., La.App., 145 So. 714; and in two opinions of this Court in the case of Weaks Supply Company, Ltd., v. Werdin et al., 147 So. 838 and Id., 154 So. 378.
The Supreme Court in the Comegys case, supra, citing Article 2689 of the Civil Code as authority, held that once a landlord’s lien attached to property in the leased premises under a conventional lease, the continuing of the lease from month to month (after the original term had ended) by reconduction, did not constitute “a new contract,” [162 La. 103, 110 So. 106] but that the lease in existence at the end of the term continued in existence from month to month and consequently the lessor’s lien for rent, even though it accrued subsequent to the chattel mortgage which had been recorded during the term of the original lease, was entitled to the priority granted the lessor as against the holder of the chattel mortgage.
The issue before us in the present case is the same as disposed of by this Court in its second opinion in the Weaks Supply Company case, 154 So. 378. We quote from that opinion: “We held originally (147 So. 838) that, as said lease had no conventional term for its duration, it was necessarily, in view of article 2685, Civil Code, by the month, and that its existence was continued from month to month by tacit reconduction, which, in effect, did not constitute a new lease, .but simply prolonged the life of the original lease contract. We also held that the continuity of the original lease as reconducted ceased when the lessor reduced the monthly rental, and for all legal and practical purposes, from that date, a new contract of lease existed between the lessor and lessee.” (Italics by writer of this opinion).
The decree affirmed the judgment of the lower Court described in the opinion as follows: “The lower court held that the rent was reduced subsequent to the filing and recording of plaintiff’s chattel mortgage, and ordered the sheriff to pay over to plaintiff the proceeds of sale of the mortgaged chattels held by him under the court’s order.”
Intervenor’s chattel mortgage was recorded in August, 1947. Plaintiffs’ original petition contains the allegation that the monthly rental was changed on January 1, 1948 from $275 to $325, and that this $325 monthly rental was, on March 1, 1948, reduced to $300 per month. The past due rent on which their suit is based was the months of June to November, 1948, inclusive. Therefore, under the allegation of plaintiffs’ own petition, the facts of the case are such as to make the above quoted extract from the Weaks opinion applicable.
Our brother of the District Court, in his comprehensive written opinion, stated that no authority was cited to him in support of intervenor’s contention that the change in the monthly rental had the effect of creating a new contract of lease. Counsel for intervnor in his brief before this Court frankly confesses this failure to dig deeply enough into the books to discover the “goose” case until after he had felt the sting of adverse judicial opinion. Counsel shojuld take comfort in the fact that many of us, as practitioners, find a keener interest in searching out law to get out from under an adverse judgment than we do in briefing a case to the Court before it has made a decision. This case presents another proof that thorough briefing by counsel is both helpful to his case and beneficial to the Court in keeping its *199 decisions consistent with the established jurisprudence.
Lessors have contended that the description contained in the chattel mortgage was insufficient.
The Louisiana Supreme Court considered a similar contention in the case of Smith et al. v. Bratsos, 202 La. 493, 12 So.2d 245, 248, and cited with approval the following textbook statement: “ ‘A description which will enable third persons, aided by inquiries which the instrument itself suggests, to identify the property, is sufficient.’” (Italics ours). The Court further approved the statement that parol evidence may be admitted to aid in the identification of the chattels mortgaged.
The chattel mortgage contains no street address listed for the “Barkett’s Cafe’’ which heads the description contained in the mortgage. Barkett testified that his son operated a business on Louisiana Street in Shreveport known as “Bark-ett’s Cafe and Bar," and that he, when he was negotiating with plaintiffs in January, 1948, had obtained a lease for a cafe on Common Street, where he later opened a second cafe. No proof was offered that his second place was called "Barkett’s Cafe.”
The chattel mortgage lists in detail fourteen separate items of equipment, giving the exact dimensions of the refrigeration equipment and. counters and the number on the motor of the six foot Norge Refrigerator and on the six door Hill butcher refrigerator box. Also included in the items are “three booths & seats, leather upholstery” and “two counters totaling 48 feet, with 20 stools.” A reading of the descriptions shows that two of the principal items are described with absolute certainty and that the whole description is such that no one could long be misled by the fact that defendant opened a second cafe, months after the chattel mortgage was executed and recorded, or that defendant’s son o> erated a business in the city described as “Barkett’s Cafe and Bar.” There is no proof that the son’s initials were the same as his father’s or that his cafe or the second one opened by W. T. Barkett was of similar inside counter construction or contained similar equipment to the place at 618 Marshall Street. We conclude that the description contained in the chattel mortgage was sufficient to meet the requirements of law.
The judgment appealed from is reversed and judgment is now rendered ordering the Sheriff of Caddo Parish, Louisiana, to pay to intervenor, Pioneer Bank & Trust Company, the amount of $950 realized from the sale of the property listed in inter-venor’s petition, less one-half of all costs in the lower Court, for which intervenor is hereby cast. Costs of appeal to be paid by plaintiffs.