PER CURIAM. [5] The original decree in this case was rendered on April 28, and no application for a rehearing was filed by either plaintiff or defendant. An application was filed within the legal delay by an amicus curiæ, but we have heretofore held that no one except a party to the suit may apply for a rehearing, and that an amicus curiæ has no standing in court to do so. Le Sassier v. Board of Liquidation, 30 La. Ann. 617; Life Association of America v. Hall, 33 La. Ann. 49; Board of Commissioners v. Baker, 123 La. 75, 48 So. 654.

The application of the amicus curiæ is therefore dismissed.

---

### (101 So. 864)

### No. 26209.

## YOUREE et al. v. LIMERICK (PAPAS, Intervener).

### In re YOUREE et al.

(March 3, 1924. On Rehearing, Nov. 3, 1924.)

*(Syllabus by Editorial Staff.)*

**1. Chattel mortgages ⬥138(3)—Lien superior to lessor's arising subsequently.**

Under Chattel Mortgage Law, § 4, privilege and lien resulting from execution and recordation of chattel mortgage takes precedence over and primes a lessor's lien arising subsequently thereto, but not one arising prior thereto.

**2. Landlord and tenant ⬥247—Landlord's lien arises when lessee places chattels on premises.**

Landlord's lien on chattels of lessee arises from time they are placed on the premises, and so has precedence over a subsequent chattel mortgage thereon, though given when no rent is due.

### On Rehearing.

**3. Chattel mortgages ⬥136 — Under facts, mortgagee of lessee's chattels in leased premises held estopped to assert lien as against lessor.**

Mortgagee of chattels in leased café, who on C., mortgagor and lessee, selling the business and chattels, signed a guaranty attached to the act of sale that the title to the property was unincumbered and free from any claims by C.'s creditors, *held* estopped to assert lien of the mortgage as against the lessors who, relying on the guaranty, accepted surrender of C.'s lease, with its superior lien, and gave to the purchasers a new lease under which lessors had an inferior lien.

Certiorari to Court of Appeal, Second Circuit.

Suit by Mrs. Bettie Scott Youree and others against W. L. Limerick, in which Tony Papas intervened. Judgment for plaintiffs, except that it ranked lien of intervener above that of plaintiffs, was affirmed by the Court of Appeal, and plaintiffs apply for certiorari or writ of review. Modified and affirmed.

Alexander & Alexander and Wise, Randolph, Rendall & Freyer, all of Shreveport, for plaintiffs.

Murff, Mabry & Perkins, of Shreveport, for intervener.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

ROGERS, J. This matter is before us for review of the judgment of the Court of Appeal for the Second Circuit affirming the judgment of the First judicial district court for the parish of Caddo.

The issue involves a plea of estoppel and the question of priority between the lessor's lien and a chattel mortgage.

The judgment of the Court of Appeal, affirming the district court, ranked the chattel mortgage above the lessor's lien. Relators (the lessors) aver that this judgment is erroneous, and that it is in conflict with the jurisprudence of the Court of Appeal for the First Circuit, as set forth in the case of Walton A. Lyons v. Clark Warehouse & Improvement Company, decided December 22, 1922.

In the case at bar, the substantial facts are as follows:

Plaintiffs are the owners of the premises No. 310 Texas street, in the city of Shreveport, which they have been leasing for some years to parties operating a café therein. Their original tenant was one Vaky, and the business was known as "Vaky's Café." Upon the retirement of Vaky, the furniture and fixtures were purchased by Gregory Caporal, who became plaintiff's tenant, and continued the business.

On July 11, 1921, Caporal obtained a loan of $4,500 from Tony Papas, for which he gave his note due January 30, 1922, and secured by a chattel mortgage on all the furniture and fixtures in the leased premises. This instrument was properly recorded.

On April 15, 1922, W. L. Limerick and H. C. Leopard bought the business, including the furniture and fixtures, from Caporal, and assumed the obligations of the chattel mortgage and of the lease. Subsequently, Leopard transferred his interest to Limerick, who became plaintiffs' sole tenant under the aforesaid lease.

Limerick having defaulted in the payment of his rent, plaintiffs, in December, 1922, brought suit against their tenant for $1,200, with interest and attorney's fees and for recognition of their lessors' lien and privilege on all the furniture, fixtures, and contents of the leased premises. The property seized was sold pendente lite for $1,800.

The court below awarded plaintiffs judgment for the amount claimed, with recognition of their lessors' lien and privilege and the enforcement thereof, but subordinated the same to the claim of Tony Papas, who, by way of intervention and third opposition, had asserted his right to the balance due, $1,500, on the note of $4,500 given him by Caporal, as secured by the aforesaid chattel mortgage on the said furniture and fixtures, claiming the said chattel mortgage primed the lessors' lien of plaintiffs.

The said judgment, on appeal by plaintiffs, was, as heretofore set forth, affirmed by the Court of Appeal.

[1] The pertinent provision of the Chattel Mortgage Law (Act No. 198 of 1918) is section 4, which reads:

" * * * That every mortgage shall be a lien on the property mortgaged from the time same is filed for recordation, which filing shall be notice to all parties of the existence of such mortgage, *and said 'lien shall be superior in rank to any privilege or lien arising subsequently thereto.*" (Writer's italics.)

The Court of Appeal in subordinating the plaintiffs' claim to that of the third opponent, interpreted this provision of the statute as intending to give a prior recorded chattel mortgage superiority in rank over a lessor's lien arising subsequently thereto. Its appreciation of the law is correct, but its application thereof to the present issue is incorrect. The statute, in express terms, provides that the chattel mortgage lien "shall be superior in rank to any privilege or lien arising subsequently thereto." No qualification nor exception is admitted. Clearly, then, the words "any privilege or lien" include the lessor's lien and privilege.

In the case of Lyons v. Clark Warehouse & Improvement Co., referred to, supra, the Court of Appeal for the First Circuit, in construing the quoted provision of the statute, held that it applied only to ordinary liens and privileges and not to the lessor's security for his rent, which is of a higher nature than a mere privilege carrying with it the right of pledge and retention.

The answer to this argument is to be found in the recognition of the fact that the right of retention is merely an ancillary and remedial right. The law confers it upon the lessor for the purpose of adding to his security and of facilitating the enforcement of his privilege. The existence of the auxiliary right of detainer may make the privilege more effective, but it, nevertheless, retains its character of a privilege without

advancing in rank. The lessor, notwithstanding his right of pledge and detainer, cannot prevent the seizure and sale of the pledged property at the instance of other creditors. Auge v. Variol, 31 La. Ann. 865; Horner v. Sheriff, 34 La. Ann. 389; Kirkpatrick & Co. v. Oldham, 38 La. Ann. 553.

This distinction was recognized and applied by the Court of Appeal for the Parish of Orleans in the case of Roses v. Siggio, No. 7904 of its docket, decided May 17, 1920. The issue involved there was whether the lien and privilege of a workman and repairman, with the right to detain the article on which he had worked, took precedence over a chattel mortgage executed prior thereto. The court held that it did not. The organ of the court was Judge St. Paul (now one of the Associate Justices of this court). The following from the opinion is apposite to the question now before us, viz:

"Now it is clear that the right to retain a thing until a debt be paid must and does necessarily confer the highest possible privilege or lien upon the thing, but the acceptance of the right is in the security thus secured to the creditor, and not in the mere vain detention of the thing itself. Hence, our courts have not hesitated to compel him whose privilege was based on a right of pledge to take the substance of his right and waive the name. Chattel mortgages duly recorded prime all liens and privileges subsequently arising, even though coupled with a right of pledge and actual possession."

The manifest purpose of the law is to permit persons owning only personal property, to borrow money on the security of such property. In many cases, the sole recourse of the mortgaged creditor is against the mortgaged chattels, hence the necessity of ranking the chattel mortgage lien above any privilege arising subsequently thereto. If this were not so, and the statute should be so construed as to rank the privilege created by the chattel mortgage law below those privileges which are accompanied by the additional right of retention and pledge, the object of the law would, in a great measure, be destroyed. We cannot accede to any such construction, but must interpret the law so as to make it as effective as the Legislature intended it to be when they enacted it.

We are therefore of the opinion that the privilege resulting from the execution and recordation of a chattel mortgage takes precedence over and primes a lessor's lien arising subsequently thereto. And, of course, the converse is also true, that a prior lessor's lien is superior to a subsequent chattel mortgage.

[2] While, as we have stated, the interpretation placed upon the statute by the Court of Appeal for the Second Circuit is correct, its application of the law to the present issue is incorrect.

We quote from the opinion:

"Third opponent's chattel mortgage was filed and recorded on July 13, 1921. The property covered by the mortgage was then in plaintiffs' building, and owned by Caporal, the lessee of plaintiffs. All of Caporal's rent was paid on April 15, 1922, when Limerick and Leopard took over the café. The latter parties, lessees, paid the rent to plaintiffs to October 1, 1922, when they defaulted. The lien or privilege of the lessors on the property found in the café, so far as this suit is concerned, arose first, on the 1st day of October, 1922. As each month's rent was paid, the lessors' lien was thereby canceled pro tanto on all the property in the building. When there was not rent due, there could be no lien and privilege. The lien or privilege is only necessary to the main obligation to pay the rent, and, necessarily, when the primary obligation was paid, that extinguished the secondary or accessory obligation, to wit, the lien."

The fundamental error in this reasoning is to be found in the court's appreciation of the time at which the lessors' lien attached. The opinion holds that this lien arose only when the rent became due. The court says, no rent due, no lien and privilege. That, as each month's rent was paid, the lien became thereby canceled pro tanto, on all the property in the leased premises.

We are unable to subscribe to this view of the law. There is no more reason for holding that the lessor's lien only attaches when default occurs in the payment of the rent than there is for holding that the chattel mortgagee's lien only attaches when the mortgage debt becomes due.

As each month's rent was paid by the lessee, the debt, the primary obligation, was canceled pro tanto, and not the lien, which, as the court itself admits, was only the "secondary or accessory obligation." The lien still remained on all the property to secure the payment of the rent to become due under the lease contract.

The lessor's lien is purely statutory. See Revised Civil Code, arts. 2705, 2707, and 3218. It is the uniform rule that the lessor's statutory lien attaches to chattels as soon as they are brought on the leased premises, and that said lien is in no wise dependent upon the maturity of the rent. 24 Cyc. p. 1250 (v), and authorities there cited.

"The statutory lien of a landlord for rent attaches at the beginning of the tenancy, or when the chattels are brought upon the premises. * * * Such lien does not depend upon a levy, and exists independently of the institution of any proceeding for its enforcement. The remedy by levy, distress or attachment, when available, is simply to enforce a lien already existing." 16 R. C. L. § 503, p. 988, and authorities cited.

The record establishes, and the foregoing excerpt from the opinion of the Court of Appeal shows, that the property covered by the chattel mortgage was in the leased premises at the time of the execution of said mortgage. The lessors' lien and privilege therefore had attached and was in existence when the chattel mortgage was given to the intervener and third opponent. In this situation plaintiffs' claim outranked that of the intervener and third opponent. Section 4, Act 198, 1918; 16 R. C. L. section 504, p. 988. The district court and the Court of Appeal were therefore in error in not so deciding.

Since we have concluded that judgment must go for plaintiffs, it becomes unnecessary for us to pass upon their plea of estoppel.

For the reasons assigned, it is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeal herein made the subject of review, and also the judgment of the district court which was affirmed by said judgment of the Court of Appeal, be set aside in so far as said judgment recognized the lien and privilege of Tony Papas, third opponent, as holder of the chattel mortgage, as superior to the lessors' lien and privilege of plaintiffs, and ordered the payment to said third opponent by preference and priority out of the proceeds of the property seized and sold herein; and it is now ordered, that the said judgments of the district court and of the Court of Appeal be, and they are hereby, amended so as to decree that the plaintiffs' lessors' lien and privilege upon the property and effects provisionally seized is superior to and outranks the lien and privilege of Tony Papas, third opponent, as chattel mortgage holder, and, accordingly, T. R. Hughes, sheriff of the parish of Caddo, is hereby ordered to pay over to Mrs. Bettie Scott Youree, E. H. Randolph, Mrs. Susie Rose Lloyd, Mrs. Paul G. Whaley, Mrs. Hal Moody, Mrs. F. H. Seufert, and W. A. Steadmen, plaintiffs, from the proceeds of the sale of the property seized herein the sum of $1,200, with 5 per cent. per annum interest thereon from judicial demand until paid, together with 10 per cent. attorney's fees and all costs of this suit, and the balance, if any, to be paid over to said third opponent on his chattel mortgage claim. It is further ordered that, as thus amended, said judgments be affirmed. The costs of all the courts in the proceedings arising from the intervention and third opposition of Tony Papas to be paid by said intervener and third opponent.

On Rehearing.

By the WHOLE COURT.

LAND, J. A rehearing was granted in this case for the purpose of correcting an error in the statement of the facts made in our original opinion. A re-examination of the act of sale from Caporal to Leopard and Limerick shows that the vendees did not assume the old lease from plaintiff lessors to Caporal, at the date of this sale, April 15, 1922. On the contrary, it is stated in said act of sale that "the said Gregory Caporal does hereby surrender his lease on the above described building as of date April 15, 1922."

The defendant Limerick testifies that a new lease was entered into between plaintiff lessors and Leopard and himself on April 15, 1922. The suit for rent in this case is based upon a new contract of lease, commencing April 15, 1922, and continuing for a period of two years, as alleged in the petition for a writ of provisional seizure.

The lease of plaintiffs to Caporal antedates the chattel mortgage of Papas, the intervener, and primes the lien arising from said mortgage, which was duly recorded July 11, 1921.

This is the true state of facts existing at the date of the sale from Caporal, the former lessee of plaintiffs, to Leopard and Limerick, the new tenants.

The act of sale has annexed to it the following stipulation: "The undersigned hereby guarantees that the title to the above property is unencumbered, free from any claims by Caporal's creditors, and that the money and notes herein delivered will be applied to the satisfaction of Caporal's creditors."

This stipulation is signed "D. Laurients."

In the answer filed by plaintiff lessors to the intervention of Papas, claiming a superior lien by virtue of his chattel mortgage, the stipulation or guaranty that the title of the property sold by Caporal is unencumbered is pleaded as an estoppel to the right of the intervener, a creditor of Caporal, at the date of said sale, to assert a lien priming that of plaintiff lessors.

[3] It, therefore, becomes necessary, under the facts of the case, for us to pass upon the plea of estoppel.

Mr. A. H. Van Hook, the representative of Mrs. Susie Rose Lloyd, one of the lessors, E. H. Randolph, Esq., one of the lessors, and member of the law firm representing the other lessors, in filing plea of estoppel, Tony Papas, the intervener, Laurients, who signed the guaranty, Caporal, the vendor, and Leopard and Limerick, the vendees, were all present at the sale made by Caporal to said vendees on April 15, 1922. Papas had married the niece of Laurients, who was the representative and adviser of Papas at this sale. It is unnecessary to enter into any discussion as to the admissibility of parol evidence to prove the agency of Laurients, who had signed the guaranty individually, as the record shows that no issue as to the fact of Laurients' agency was made in the case. Counsel for Papas, intervener, propounded to Laurients, on direct examination, the following question: "Did you agree, as the representative of Tony Papas, to take these notes in the place of the original ones?"

On cross-examination by counsel for plaintiff lessors, Laurients testified that he had no interest in the chattel mortgage notes that Papas, intervener, was suing on, that he advised and represented Papas, and that he, Laurients, "figured in all of these transactions." It is made plain by the testimony of Limerick that he would not have purchased the stock and fixtures in the "Vaky Café" from Caporal, without the guaranty signed by Laurients, and which was demanded by Limerick at the time of the sale.

It is equally clear that plaintiff lessors would not have surrendered their superior lien on the stock and fixtures of Caporal, their former tenant, by consenting to the cancellation of the old lease, had not the guaranty been given that the title was unencumbered and free from the claims of Caporal's creditors; Papas, the intervener, being, at the time, one of these creditors.

The presence of both Papas and Laurients, at this sale, the presence on that occasion of Mr. A. H. Van Hook, the representative of the lessor, Mrs. Susie Rose Lloyd, and the presence of E. H. Randolph, Esq., one of the lessors, and attorney for the rest, in filing plea of estoppel, leaves no doubt as to the validity and binding effect of said plea. No objection having been made at the time by Papas, the intervener, to the written guaranty, or to the representation by Laurients of him as agent, the plaintiff lessors, relying upon the faith of said guaranty, surrendered a superior lien as lessors under the old lease, which was canceled, and a new lease to Limerick and Leopard, with lien inferior to that of Papas, the chattel mortgage creditor, was consented to and perfected. It would be highly inequitable under such a state of facts to recognize the lien arising from the chattel mortgage of Papas, intervener, as superior in rank to that of plaintiff lessors, to the injury of the latter. If Papas had not been present at the time of said sale and had not acquiesced in the proceedings, and had objected at the trial to parol proof of the agency of Laurients, who had signed the guaranty individually, a different state of facts would have been presented by the record in this case.

For the reasons assigned, the plea of estoppel is sustained, and our former decree is reinstated and made the final judgment of the court.

ROGERS, J., concurs and hands down an opinion, in which the CHIEF JUSTICE concurs.

THOMPSON, J., recused.

ROGERS, J. (concurring). I concur in the decree on rehearing for the reason that the plea of estoppel is well founded, and, also, because the lessors' lien and privilege of plaintiff is superior to the chattel mortgage of the intervener.

The majority opinion finds a distinction between the lessors' privilege on the chattels in the leased premises prior to the lease to Leopard and Limerick, and the lessors' lien and privilege on said chattels subsequent thereto. The writer of the opinion holds that under the lease to Caporal the lessors' privilege primed the chattel mortgage, but that under the lease to Leopard and Limerick the lessors' lien and privilege became inferior to the chattel mortgage. I am unable to subscribe to this.

The leased premises were the same and the chattels were the same under the lease to Leopard and Limerick as they were under the lease to Caporal. As shown in the opinion on the original hearing, the lessors' lien and privilege attached to the chattels as soon as they were brought into the leased premises. This would have been so even if the chattels had been owned by a third party. Civil Code, art. 2707. And the lessor's lien is in no wise dependent upon the maturity of the rent. If the goods had been property of a third person brought into the leased premises before the execution of the lease to Leopard and Limerick, they would have been subject to plaintiffs' lien and privilege, notwithstanding a subsequent chattel mortgage placed thereon when they sought to enforce their claim for rent; and, unquestionably, the same rule applied to the chattels which were owned by the lessees.