No. 1175
Second Circuit

---

PAULINE R. BERNHARDT v. CHARLES SANDEL; G. E. McGRAW, Third Opponent

---

(December 10, 1925, Opinion and Decree.)

*(Syllabus by the Editor)*

1. Louisiana Digest—Landlord and Tenant—Par. 105.
A lease contract secures the landlord's lien against the belongings of the tenant and third persons within the leased premises, but this lien so created only secures all the rent stipulations in the lease, secures that and no more.

2. Louisiana Digest—Landlord and Tenant—Par. 105.
The landlord's lien is only an auxiliary to the main obligation of lease, and when the main obligation is extinguished the landlord's lien ceases to exist.

3. Louisiana Digest—Chattel Mortgages—Par. 4; Landlord and Tenant—Par. 111.
Where a chattel mortgage was placed on furniture after it had been moved into the leased premises, and, thereafter the first lease having expired, a new lease is made, the chattel mortgage thereby primes the new lease which was made after the chattel mortgage had been placed and recorded on the furniture.

Appeal from the Sixth Judicial District Court of Louisiana, Parish of Ouachita, Hon. Fred. M. Odom, Judge.

This is a suit in which the landlord sued out a provisional, seizure and seized furniture on the leased premises. The holder of .the chattel mortgage on the furniture intervened. There was judgment for the intervenor and plaintiff landlord appealed.

Judgment affirmed by the Court of Appeal but reversed on a rehearing. Case reopened because of a decision of the Supreme Court in another case and judgment of the trial court and first opinion of the Court of Appeal affirmed.

M. C. Redmond, of Monroe, attorney for plaintiff, appellant.

J. M. Munholland, of Monroe, ·attorney for third opponent, appellee.

CARVER, J. This is a contest between Mrs. Bernhardt, who has a leasor's privilege, and McGraw, who has a chattel mortgage on certain furniture sold under legal process.

McGraw rented a hotel from Mrs. Bernhardt under a lease contract beginning January 1, 1920, and ending December 31, 1920. He bought the furniture and placed it in the hotel.

On February 16, 1920, he assigned his rights under the lease to Sandel and also sold him the furniture, part cash and part credit, taking a chattel mortgage for the unpaid portion of the price, which mortgage was duly recorded.

Sandel paid all rent under the lease to McGraw but on January 4, 1921, after the expiration of that lease, made a new contract of lease with Mrs. Bernhardt, stating it was to begin January 1, 1921, and run to January 1, 1924. He paid the rent under this contract also up to and including August, 1921, but failing to pay thereafter Mrs. Bernhardt sued out a provisional seizure and seized the furniture, whereupon McGraw filed a third opposition claiming that his chattel mortgage ranked the lessor's privilege of Mrs. Bernhardt.

The district judge decided in favor of McGraw and Mrs. Bernhardt appealed. This court, with Justice Dawkins as the organ, affirmed that judgment, but a rehearing was granted. On the rehearing that court, Judge Crow being the organ, decided in favor of Mrs. Bernhardt, but another rehearing was granted to await the decision of the Supreme Court in the case of Youree vs. Limerick, involving a similar question. That case has since been decided and is reported in Youree vs. Limerick, 157 La. 39, 101 South. 864.

Counsel for both parties concede that that case is decisive of the crucial question in this, but each claims that it supports his pretensions.

In the Youree case, during the existence of a lease from the Youree estate to one Caporal, Caporal borrowed money from one Papas on a chattel mortgage covering certain chattels then in the leased premises. Caporal sold the property to Limerick and Leopard before this lease expired, but by agreement of all parties the lease

was renewed and the lessors made a new lease to Limerick and Leopard. The rescission of the old lease was made on the representation of Laurients, agent of Papas, that the property of Papas in the leased premises was unincumbered, which representation lessors plead as an estoppel against Papas in a contest arising thereafter between them and him when Limerick and Leopard defaulted on their rent payments.

The Court of Appeal held that the lessors' privilege only secured the rent as it became due from month to month, each payment of a month's rent cancelling the privilege pro tanto, that where no rent was due there could be no privilege and that Limerick and Leopard having paid the rent up to a time subsequent to the chattel mortgage the lessors' privilege sued on was one arising subsequently to the chattel mortgage and therefore inferior to it under section 4 of the chattel mortgage law (Act 198 of 1918) which reads as follows:

"That every mortgage shall be a lien on the property mortgaged from the time the same is filed for recordation which filing shall be notice to all parties of the existence of such mortgage and said lien shall be superior in rank to any privilege or lien arising subsequently thereto."

The case was taken up by certiorari to the Supreme Court which, on the first hearing, decided that the Court of Appeal had erred in its application of the law and that the privilege of a lessor secured the whole stipulated rent, whether due or to become due.

In the course of the opinion Justice Rogers, the organ of the court, stated that Limerick and Leopard had assumed the Caporal lease. On its being pointed out, in an application for rehearing, that they had not assumed Caporal's lease but had obtained a new one which, of course, post dated the chattel mortgage, a rehearing

was granted. On the rehearing Justice Land, was the organ of the court. The decision went again to the lessors, but this time it was placed on the ground that the plea of estoppel was good. The court said:

'No objection having been made at the time by Papas the intervenor, to the written guaranty; or to the representation by Lauriets of him as agent, the plaintiff lessors, relying upon the faith of said guaranty, surrendered a superior lien as lessor's under the old lease, which was cancelled, and a new lease to Limerick and Leopard with lien inferior to that of Papas, the chattel mortgage creditor, was consented to and perfected."

Justice Rogers wrote a concurring opinion, in which the Chief Justice concurred, dissenting from the view that the lien of the second lease was inferior to the chattel mortgage, and saying:

"The majority opinion finds a distinction between the lessor's privilege on the chattels in the leased premises prior to the lease to Leopard and Limerick and the lessor's lien and privilege on said chattels subsequent thereto. The writer of the opinion holds that under the lease to Leopard and Limerick the lessor's lien and privilege became inferior to the chattel mortgage. I am unable to subscribe to this."

Counsel for the lessor in this case quoted the following from the opinion of Justice Rogers on the first hearing:

"The record establishes and the foregoing excerpt from the opinion of the Court of Appeal shows that the property covered by the chattel mortgage was in the leased premises at the time of the execution of said mortgage. The lessor's lien and privilege therefore had attached and was in existence when the chattel mortgage was given to the intervenor and third opponent. Sec. 4 of Act 198 of 1918; R. C. L. vol. ——, sec. 504, p. 988."

Counsel argues that as the property in this case was in the leased premises when

the chattel mortgage was executed the lessor's privilege attached not only for the existing lease but for the new lease thereafter made to Sandel.

It is true that this is the view expressed by Justice Rogers and Chief Justice O'Niell, but it is the opposite of the view expressed on rehearing in the majority opinion. That opinion distinctly holds that the lien of the later lease was inferior to the lien of the chattel mortgage. We would be obliged to follow this view whether we agreed with it or not, but we think it is correct. In our opinion, while the removal of goods to leased premises, even those of a third person with his consent, makes them immediately subject to the lien, that is not what creates the lien. The lease contract does this, and the lien so created secures all the rent stipulated in the lease, but it secures only that. When that rent is all paid the contract is fully performed and becomes extinguished; that lien being only auxiliary to the main obligation, falls because there is nothing left to support it. If another lease contract be made, another lien is created, but it is a different lien from that securing the first lease.

If A, without being a lessee of B, moves into his house with his goods, A is responsible to B for the use and occupancy, but B has no lessor's lien on A's goods because he is not a lessee.

This shows that what creates the lien is the lease and not the moving of movable property into premises.

What the rights of the parties would be if there had been no new lease but a reconduction of the old one, which question was argued by plaintiff's counsel, we need not decide; that question not arising in this case. However, there is this difference between reconduction of an old lease and the execution of a new one. In recon-

duction the renewal would be only, in case of a house, from month to month, wherefore if the lessor's lien in a reconductive lease was superior to a chattel mortgage because the original lease was so superior, this would not materially impair the mortgagee's security. He could foreclose the mortgage before much additional rent accrued.

But under the doctrine contended for by plaintiff's counsel, that the lien of any new lease would be superior to the lien of the previous chattel mortgage merely because the mortgaged property was in the leased premises at the time the mortgage was given, chattel mortgages could be rendered wholly valueless by the execution of long time leases, subsequent to the mortgage. Furthermore, parties taking chattel mortgage on property in leased premises do so with knowledge of the law of reconduction and if the rights of a lessor under a reconductive lease be what counsel claims, the mortgagee is supposed to have contracted with reference to those rights, but he cannot be expected to contract with reference to rights which may be conferred by a lease made after the execution and registry of his mortgage. He knows, of course, that if the mortgaged property be in the premises leased by the mortgagor the goods are subject to the lien created by the lease; but, as said above, the lien of that lease secures only the rent stipulated in that lease, and not rent which may thereafter be stipulated in a new lease.

As to the landlord's right of pledge, the entire court in the Youree case concurred in the view that this, while giving the landlord the right of retention, did not advance the rank of his lien or prevent other creditors of the lesse from seizing and selling the affected property.

For these reasons, the judgment of the lower court is affirmed.

ODOM, J. Recused.