## BURGLASS v. WRIGHT et al. *
### No. 14894.

Court of Appeal of Louisiana. Orleans.

Feb. 4, 1935.

Solomon S. Goldman, of New Orleans, for appellant.

Normann & McMahon and Harold M. Rouchell, all of New Orleans, for appellees.

LECHE, Judge.

On September 30, 1930, plaintiff sold and delivered to James H. Wright a certain lot of furniture for the price and sum of $822.30. Wright paid in cash the sum of $80, and for the balance of the purchase price, the sum of $742.30, he executed a chattel mortgage in favor of plaintiff, wherein plaintiff retained his vendor's lien and privilege upon the said furniture. Wright also executed his promissory note in the said sum, and the chattel mortgage was duly and properly recorded on October 1, 1930. On January 31, 1931, Wright placed the furniture which he had thus purchased from petitioner in storage with the O. K. Storage & Transfer Company, Inc. He then became delinquent in his monthly payments to petitioner under the terms of the chattel mortgage, and also became delinquent in the payment of the monthly storage charges to the O. K. Storage & Transfer Company. On or about January 12, 1933, Wright was adjudged a voluntary bankrupt in the United States District Court for the Eastern District of Louisiana.

The following order, which we quote from counsel's brief, was entered by the referee in bankruptcy:

"Let there be waiver and disclaimer entered by the Bankrupt estate of any right, title, claim, interest, advantage or ownership

*Rehearing denied March 4, 1935.

In, to or against any of the household effects bought by the Bankrupt from A. Burglass, which household effects are presently stored with the O. K. Storage Co. and on which there is presently due the O. K. Storage Co. the sum of $124.98 as storage charges conditioned upon the payment by A. Burglass of the sum of Fifty Dollars ($50.00) cash with the reservation to the O. K. Storage Co. of their rights as against the furniture stored by the Bankrupt with them;

"Let the settlement of the storage charges due the O. K. Storage Co. of $124.98 be eliminated from any consideration in these bankruptcy proceedings, and let the settlement of the storage charges due the O. K. Storage Co. of $124.98 be by and as between the O. K. Storage Co. and A. Burglass."

The bankruptcy court thus disclaimed any further interest in the matter, leaving to the parties their right to settle the matter as between themselves and independently of the bankruptcy proceedings. Thereafter, on March 30, 1933, plaintiff filed this suit against Wright and the O. K. Storage & Transfer Company, Inc., praying for a money judgment against Wright and praying that petitioner's vendor's privilege and chattel mortgage lien be declared superior to any lien, privilege, or claim of the O. K. Storage & Transfer Company, Inc., and asking that the court order said company to turn the merchandise over to the civil sheriff for the purpose of being sold at public auction, etc. The O. K. Storage & Transfer Company, Inc. answered, pleading the priority of its privilege for storage and preservation of the property over the vendor's privilege and chattel mortgage lien of plaintiff, and further pleading that, by reason of plaintiff's course of action and conduct in permitting and encouraging it to incur necessary charges and expenses for the preservation of said property, he is estopped to urge his alleged privileges as prior to its rights. This defendant further prayed for judgment in reconvention against plaintiff in the sum of $132.98, being the amount due them for storage up to and including March 31, 1933, together with interest on said amount from the date of plaintiff's suit. No answer being filed by Wright, judgment by default was entered against him as prayed for, and further judgment was entered in favor of defendant O. K. Storage & Transfer Company, Inc., and against plaintiff on the reconventional demand, decreeing that plaintiff was estopped from enforcing, or attempting to enforce, the lien resulting from his chattel mortgage on the stored furniture, and that, out of the proceeds of the sale by the civil sheriff, the sum of $152.40 be paid to the O. K. Storage & Transfer Company, above and in preference to the claim of plaintiff under his chattel mortgage.

From this judgment plaintiff has appealed.

Two questions are presented here, the first, a question of law, being whether or not plaintiff's vendor's privilege and chattel mortgage primes the subsequently accruing privilege or lien of the O. K. Storage & Transfer Company for the storage and preservation of the property. The second question, one of fact, is whether or not plaintiff's conduct was such as to encourage the storage and preservation of the property on the faith of his guaranty, and consequently estopping him from now asserting his priority. We will consider the second question first, because, if the plea of estoppel is good, it is immaterial whether or not plaintiff's chattel mortgage primed defendant's privilege, and a consideration of that point will be unnecessary.

A careful reading of the transcript in this case reveals that certain oral testimony in support of the plea of estoppel was admitted by the learned trial judge over the objection of counsel. The rulings of the trial judge were correct and proper in the circumstances. This proceeding is entirely different from one in which it is sought to prove that defendant had guaranteed the debt of a third person. In such a case strict rules of evidence are adhered to, and such proof must be in writing. In support of the plea of estoppel, the rules are much more lenient. In the case of Breaux et al. v. Albert Hanson Lumber Co., Ltd., 125 La. 421, 51 So. 444, 446, the court said:

"We hold that the bad faith of this plaintiff was susceptible of proof by parol, and that the oral testimony admitted to that end was admissible.

"It may also be proven by oral testimony all that is needful to sustain the plea of estoppel. In this instance this plaintiff, by his representation and connivance, estopped himself from charging the defendants with trespass and wrongdoing."

Now, perhaps, for the very reason that the strict rules of evidence are somewhat abated in supporting the plea of estoppel, he who urges the plea is held to a strict proof of his allegations in support thereof. In the case of Young et al. v. Longshoremens' P. U. Ben. Association, 8 Orl. App. 146, the court said: "The facts upon which estoppel is based must be proved by the party urging the plea."

And in Hebert v. Champagne, 144 La. 659, 81 So. 217, 218, Chief Justice Monroe said: "The burden of proof in such case rests upon the pleader, and he must prove the very facts upon which the estoppel is based. In order that one should be denied his right, or deprived of his property, by reason of an equitable estoppel, it should appear that the person pleading the estoppel has been misled, by the other, to his prejudice."

The general rule is very clearly stated in 21 C. J. p. 1250, § 267, as follows: "Under the rule that he has the burden of proof who has the affirmative of the issue, the burden of proof is on the party alleging and relying on an estoppel to establish all the facts necessary to constitute it, by a preponderance of the evidence, subject of course to the proper presumptions which may be indulged under the facts of the particular case. Where the evidence is evenly balanced the burden is not sustained."

The evidence in this case in support of the plea of estoppel consists entirely in the testimony of Mr. Polders, assistant manager of the O. K. Storage & Transfer Company. He testified that the furniture was placed in storage in his warehouse in January, 1931, and that at that time it was not made known to him that any one other than Wright would pay the storage charges. He testified that his first conversation with Mr. Burglass was over the telephone and about a year after the furniture had been stored; that Mr. Burglass told him that Wright had made arrangements with some relative to take care of the account, and that he knew Mr. Wright to be honest and truthful and that he wanted the goods held up from the sale, stating that he would guarantee the storage account, as he knew that Mr. Wright within a short time would receive money for the payment of his own bill and that of the O. K. Storage people and that he would guarantee the account if the goods were withheld from sale; that Mr. Burglass was asked to confirm this in writing, but no letter was ever received. Mr. Polders further testified that he subsequently had another telephone conversation with Mr. Burglass, in the course of which Mr. Burglass denied ever having guaranteed the account. Mr. Polders also testified that on two different occasions the furniture was withheld from sale by his company at the request of Mr. Burglass. The sum and substance of his testimony is that his company relied solely on the guaranty of Burglass to pay the storage charges.

As opposed to this, we have the testimony of Mr. Burglass, who stated that never at any time did he guarantee the account of Wright, but at all times relied on what he believed to be the priority of his chattel mortgage lien. In answer to a question as to whether or not he had guaranteed this payment, Mr. Burglass answered: "If your honor will permit me to answer that question I believe it is an insult to my intelligence that, having a prior claim and knowing that that I would guarantee a claim that has no right at all. I think I am too much of a business man for that purpose."

He admitted the telephone conversation with the storage company, but his version of it is that he told them that he was carrying the account of Wright for a large sum; that he believed Wright to be honest and deserving of consideration, and he saw no reason why they should not also take the same risk that he was taking, inasmuch as he was interested more heavily than they were.

Without going into further detail as to the testimony of Burglass, it is enough to say that he categorically and consistently denied that he ever guaranteed the storage charges, or did anything calculated to lead the storage people to believe that he did so.

Both of these gentlemen were no doubt honest and sincere in their testimony, and probably each believed his version of the affair to be the correct one, but, were this the only evidence before us, it could hardly be said that the plea of estoppel was sustained by a preponderance of the evidence. The record contains the testimony of other witnesses and also some documentary evidence in the form of letters, and it remains to be seen whether this additional evidence tips the scale one way or the other.

Mr. Wright, called as a witness on behalf of the O. K. Storage & Transfer Company, testified that at no time, in any conversation with Mr. Burglass, did Burglass ever inform him that he (Burglass) had guaranteed the account with the O. K. Storage & Transfer Company. When questioned about the agreement, Mr. Wright, after stating that he had received a notice of sale from the storage company, said: "That I went in to Mr. Burglass specifically to discuss the matter to satisfy the O. K. Storage, and he in turn said that he would do what he could to help out the situation and, relieve the pressure, at which time he talked to someone at the O. K. Storage—I don't know who it was—and told them that he had been carrying my account, which amounted to six hundred and some odd dollars and had not been getting anything and that he thought I would do the fair and square thing with him, and in view of the

fact that he was willing to carry me for that amount that the O. K. Storage should be willing to accept some kind of an agreement on a monthly basis to get the account paid. The agreement that I made with Mr. Burglass, I told him that I would do—I would pay $5.00 a pay, that was $5.00 on the 1st and 15th of each month for the time being until I was in such a position that I could do better, that I was attempting to raise money to settle all of my difficulties which I had been trying to do for some time and it was my only hope to get out."

He further stated that Burglass said he was willing to play ball with him and that he thought the O. K. Storage should do the same thing, and that Mr. Burglass relieved him of payments on his account while he was liquidating the account with the O. K. Storage & Transfer Company. When asked if Burglass did not authorize him to tell the storage people that he (Burglass) would pay the storage, he gave the following answer: "He said he would see them in Hell before he would."

Our view of Mr. Wright's testimony is that it confirms the position of Burglass rather than that of the storage company. At no time, according to Wright's testimony, did Burglass ever say that he had or would guarantee the account, and the only agreement seems to be between Wright and Burglass to the effect that, if Wright would endeavor to liquidate the storage account at the rate of $5 semi-monthly, Burglass would withhold demand for further payments on his own account, and that Burglass used what influence he may have had with the storage company in securing their leniency toward Wright.

The letter of January 22d (Marked D-10), written by Wright to the attorneys for the storage company, wherein he said, "I owe a good size bill on that furniture to Burglass, and we came to an agreement sometime ago that I was going to go to housekeeping not later than March 1st and at that time Mr. Burglass will pay the storage account in full," refers to the understanding had between Burglass and Wright wherein Wright was to secure an amount of money sufficient to cover both accounts in their entirety, to remit the amount to Burglass, and that he (Burglass) was then to pay the bill of the storage company. Burglass was not a party to this correspondence. It appears that there were several further agreements and understandings between Burglass and Wright, the conditions of each depending upon Wright's financial condition at the time, and the agreement as above stated was a result of an expectation on the part of Wright to receive a sufficient sum from a relative to liquidate the entire matter.

The letter of December 1, 1931 (marked D-8), and written by Wright to the storage company, wherein Wright says, "enclosed you will find $5.00 in accordance with the agreement made with you by Mr. A. Burglass this morning," refers to the agreement between Wright and Burglass wherein Burglass agreed to suspend payments to him in consideration of Wright making the $5 semimonthly payments to the storage people, and which agreement between Wright and Burglass was communicated by telephone to the O. K. Storage & Transfer Company by Burglass and which seemed to satisfy them for the time being. Burglass was not a party to this letter.

On May 16, 1932, Burglass wrote the following letter (marked D-4) to the storage company:

"O. K. Storage & Transfer Co., 1901 St. Charles Av., New Orleans, La.

"Gentlemen: We are writing you in regards to the account of Mr. James H. Wright. This party owes us a balance of $644.83 on merchandise sold him covered by Chattel Mortgage, which we understand is in storage with you. We have the utmost confidence in this gentleman, but due to circumstances under which he has been laboring, it has been impossible for him to give any of his obligations proper attention and for this reason, we have been carrying his account with the large balance mentioned before without receiving any payments whatever, awaiting the time when he could adjust his finances sufficient to allow proper attention given all his creditors.

"We were advised by Mr. Wright several weeks ago that he had made arrangements with a relative of his to assist him in settling all his obligations, but as this money is in a homestead, you can readily understand that the exact time that it will be secured is indefinite.

"We are taking the liberty to write you in Mr. Wright's behalf as he has advised us that he owes you storage charges in the neighborhood of about $80.00 and we trust that you will assist Mr. Wright as we are doing and carry his account along for an additional time, We do not hesitate to say that we feel that this matter will be adjusted in full at a very early date.

"We shall appreciate your advising us if you will cooperate with us in this matter.

"Yours truly,

"AB:HD.                               A. Burglass.

"C/O Mr. Wright."

The terms of this letter certainly do not convey the idea that Burglass guaranteed the account of Wright. In the last paragraph it is stated: "We are taking the liberty to write you in Mr. Wright's behalf, as he has advised us that he owes you storage charges," etc.

If, as a matter of fact, Burglass had previously guaranteed Wright's account, the receipt of such a letter would certainly call for an immediate response on the part of a prudent business man, as the tenor of that letter is distinctly to the contrary.

On November 11, 1932, the attorneys for the O. K. Storage & Transfer Company wrote the following letter (marked D–9) to Burglass:

"A. Burglass Furniture Co., 1400 Canal Street, New Orleans, Louisiana.

"In re: J. H. Wright

"Gentlemen: With reference to the above account, our client the O. K. Storage & Transfer Company has informed us that their annual sale will take place on December 7th, 1932. It is their intention to sell the furniture of Mr. J. H. Wright on that day at public auction to satisfy their lien in conformity with the provisions of Act 221 of 1908 and Act 167 of 1898. The first advertisement of this sale will take place on November 21st.

"The storage bill in this matter has been mounting steadily and despite numerous promises and proposed settlements the account has not been satisfied.

"In a letter by your company to our client under date of May 16, 1932, you, as chattel mortgagee of the furniture in question requested that our client carry the account along and that settlement would be made in full by Mr. Wright at an early date. Because of your recommendation we advanced our file accordingly. This settlement has never materialized.

"We are therefore writing you this letter to give you notice, as chattel mortgagee, that in view of the mounting charges and expense our client is incurring for the storage of this property it will avail itself of the rights afforded it under the law to satisfy its lien. The notice required by law will be sent to Mr. Wright and we are now notifying you that you might be informed of the situation and take such action as you may deem advisable.

"Yours very truly,

"Normann & McMahon."

It can easily be seen from the terms of the foregoing letter that no idea is there conveyed as to the guaranty by Burglass of the account. The letter states specifically: "We are therefore writing you this letter to give you notice, as chattel mortgagee, that in view of the mounting charges and expenses our client is incurring for the storage of this property, it will avail itself of the rights afforded it under the law to satisfy its lien."

Defendant laid some stress on the notice of sale dated November 5, 1932, sent by the storage company to Burglass, and argues that this was sent by reason of the alleged guaranty by Burglass of Wright's account. This is easily explained by the testimony of Mr. Polders, who stated that it was the usual thing for them to send these notices to each and every person who might in any way be interested in any merchandise which they were about to sell for storage charges. This would naturally apply to a chattel mortgagee, and it was unquestionably in this capacity that this notice was sent to Burglass.

In the case of Federal Land Bank of New Orleans v. Mulhern et al., 180 La. 627, 157 So. 370, 375, Justice Odom said: "There is nothing in the record to show that plaintiff at any time agreed to waive its right to declare the balance on the mortgage due and payable, and nothing it did can be reasonably construed to mean that it intended to do so."

Our appreciation of the record in this case, after a careful study, convinces us that plaintiff at no time waived his rights as holder of the chattel mortgage or did anything that could reasonably be construed so.

It appears that plaintiff did all that he could to assist his customer. He carried his account for months without payment, and encouraged him to pay what he could when he could. He further urged him to pay the account of the storage people before liquidating his own account, and suggested that the storage company accept these payments and withhold sale of the goods. It does not seem reasonable that Burglass would have guaranteed this account when he could easily have transferred the furniture to his own warehouse and kept it safely. If the O. K. Storage & Transfer Company were in any way lulled or misled by any words, actions, or omissions on the part of Burglass, they were so lulled or misled as to the credit of Wright and not as to any guaranty of the account by Burglass, and this, even if true, cannot form the basis of an estoppel as to Burglass. It would seem that, if Burglass had verbally guaranteed this account, a prudent business man would immediately have written him confirming the conversation. Not only was

this not done, but at no time did the storage company reduce this to writing, or even refer to it, and such communications as they, or their attorneys, addressed to Burglass, are silent on this point. As said in Federal Land Bank v. Mulhern, supra: "Estoppels are not favored in law and should not be permitted to defeat the administration of law and cannot be sustained on argument or by inference."

For the foregoing reasons, we are of the opinion that the plea of estoppel has not been maintained.

Plaintiff, in claiming the priority of his lien on the furniture, relies on section 4 of Act No. 198 of 1918, which reads as follows: "Be it further enacted, etc., that every mortgage shall be a lien on the property mortgaged from the time same is filed for recordation, which filing shall be notice to all parties of the existence of such mortgage, and said lien shall be superior in rank to any privilege or lien arising subsequently thereto."

The storage company, in support of its claim for a privilege, relies on the following articles of the Civil Code:

"3224. *Depositary—Preservation of Thing —Expenses—Rights.*—He who, having in his possession the property of another, whether in deposit or on loan or otherwise, has been obliged to incur any expense for its preservation, acquires on this property two species of rights.

"3225. *Expenses—Depositary Considered Pledgee as against Owner and Creditors.*— Against the owner of the thing, his right is in the nature of that of pledge, by virtue of which he may retain the thing until the expenses, which he has incurred, are repaid.

"He possesses this qualified right of pledge, even against the creditors of the owner, if they seek to have the thing sold. He may refuse to restore it, unless they either refund his advance, or give him security that the thing shall fetch a sufficient price for that purpose.

"3226. *Deposit Sold—Preference over Creditors for Expenses.*—Finally, he who has incurred these expenses has a privilege against these same creditors, by virtue of which he has preference over them out of the price of the thing sold, for the amount of such necessary charges as he shall have incurred for its preservation. This is the privilege in question in the present paragraph."

The legal question presented is whether or not the privilege conferred by articles 3225, 3226, C. C., on one having in his possession the property of another, whether in deposit or on loan or otherwise, primes the chattel mortgage lien of a third person whose chattel mortgage was duly recorded at a prior time. In Weiss v. Hudson Const. Co., 151 La. 1, 91 So. 525, 526, the court said: "Section 4 of the act provides that every mortgage shall be a lien on the property mortgaged from the time same is filed for recordation, which filing shall be notice to all parties of the existence of such mortgage, and said lien shall be superior in rank to any privilege or lien arising subsequently thereto. The lien dates from the filing of the act of mortgage, and the rank of such lien relates to the future."

In Youree et al. v. Limerick, 157 La. 39, 101 So. 864, 865, 37 A. L. R. 394, the court, after quoting section 4 of Act No. 198 of 1918 (supra), said: "The statute, in express terms, provides that the chattel mortgage lien 'shall be superior in rank to any privilege or lien arising subsequently thereto.' No qualification nor exception is admitted. * * *

"'The manifest purpose of the law is to permit persons owning only personal property, to borrow money on the security of such property. In many cases, the sole recourse of the mortgaged creditor is against the mortgaged chattels, hence the necessity of ranking the chattel mortgage lien above any privilege arising subsequently thereto."

In Bernhardt v. Sandel, 4 La. App. 648, the court said: "We are of the opinion that the Legislature, in the enactment of Act 198 of 1918, designed to make all claims on chattels inferior to the holder of a chattel mortgage where such claims arise subsequently to the execution and recordation of such chattel mortgage."

From the foregoing it will be seen that the language of section 4 has been construed to mean just what it says; namely, that from the date of recordation of the chattel mortgage the lien "shall be superior in rank to any privilege or lien arising subsequently thereto."

This should be conclusive of the question presented here, but, contends defendant, the chattel mortgage is subject to certain infirmities from its inception, and for this reason its privilege has priority over the chattel mortgage lien of plaintiff. In support of this contention is cited the rule that, if one having a lien, privilege, or mortgage on movable or immovable property suffers the same to be sold in globo, or confusedly in mass with other property, without protecting his rights by causing such property to be appraised and sold separately, his lien, privilege, or mortgage is lost. While this condition may be

read into every act of mortgage, and may be termed an infirmity, it is in no sense comparable to the proposition presented here. The question here is the priority of privileges, while that is solely a question of extinguishment or loss of the privilege. Nor do we consider the question of removing the mortgaged property to another parish, or the question of the priority of state and city tax liens in any way similar.

As regards the privilege conferred by articles 3224, 3225, and 3226 of the Civil Code, we find, in Hyams v. Smith, 6 La. Ann. 362, the privilege allowed in favor of a keeper of certain slaves as against the owner of the slaves. See, also, Tom v. Slave Ernest, 15 La. Ann. 44; Andrews v. Crandell, 16 La. Ann. 208, and Powers & Co. v. Sixty Tons of Marble, 21 La. Ann. 402. In the Powers Case the question was whether the privilege for the expenses of preservation was superior to the prior claim for freight, and the court held that it was, but in that case the marble was placed in storage by those claiming the amount due for the freight, and was allowed by them to remain in storage for a number of years. In the other cases above cited there was no question of priority. In the case of C. R. Short Lumber Co. v. Tatum, 4 La. App. 425, the opinion does not reveal whether or not the chattel mortgage was recorded previously or subsequently; the court holding that the privilege was lost because there was no possession of the mules. With reference to the right of pledge, that question was specifically decided in Youree v. Limerick, supra, where, after quoting section 4 of Act No. 198 of 1918, supra, the court said:

"In the case of Lyons v. Clark Warehouse & Improvement Co., referred to, supra, the Court of Appeal for the First Circuit, in construing the quoted provision of the statute, held that it applied only to ordinary liens and privileges and not to the lessor's security for his rent, which is of a higher nature than a mere privilege carrying with it the right of pledge and retention.

"The answer to this argument is to be found in the recognition of the fact that the right of retention is merely an ancillary and remedial right. The law confers it upon the lessor for the purpose of adding to his security and of facilitating the enforcement of his privilege. The existence of the auxiliary right of detainer may make the privilege more effective, but it, nevertheless, retains its character of a privilege without advancing in rank. The lessor, notwithstanding his right of pledge and detainer, cannot prevent the seizure and sale of the pledged property

at the instance of other creditors. Auge v. Variol, 31 La. Ann. 865; Horner v. Dennis, Sheriff, 34 La. Ann. 389; Kirkpatrick & Co. v. Oldham, 38 La. Ann. 553.

"This distinction was recognized, and applied by the Court of Appeal for the Parish of Orleans in the case of Roses v. Siggio, No. 7904 of its docket, decided May 17, 1920 [see Louisiana and Southern Digest]. The issue involved there was whether the lien and privilege of a workman and repairman, with the right to detain the article on which he had worked, took precedence over a chattel mortgage executed prior thereto. The court held that it did not. The organ of the court was Judge St. Paul (now one of the Associate Justices of this court). The following from the opinion is apposite to the question now before us, viz.:

" 'Now it is clear that the right to retain a thing until a debt be paid must and does necessarily confer the highest possible privilege or lien upon the thing, but the acceptance of the right is in the security thus secured to the creditor, and not in the mere vain detention of the thing itself. Hence, our courts have not hesitated to compel him whose privilege was based on a right of pledge to take the substance of his right and waive the name. Chattel mortgages duly recorded prime all liens and privileges subsequently arising, even though coupled with a right of pledge and actual possession.' "

The precise question presented here was decided in Federal Mortgage & Finance Co. v. Bohne (La. App.) 146 So. 173, 174. In that case Justice Higgins, as the organ of this court, said:

"It is admitted that the plaintiff's chattel mortgage was properly recorded prior to the time the alleged repairs and storage charges (except those incurred by the constable) of the intervener arose; therefore, under the expressed provisions of section 4 of Act No. 198 of 1918 and section 1 of Act No. 209 of 1926, the chattel mortgage of the plaintiff is entitled to priority over the lien and privilege of the intervener. But, says the counsel for intervener, that as the repairs and storage charges were for the preservation of the automobile and it had possession of the car, under the provisions of articles 3224, 3225, and 3226, Revised Civil Code, it had a privilege on the car by virtue of which it was entitled to be paid by preference and priority over the other creditor, out of the proceeds of the sale thereof.

"Conceding that these articles do provide for a privilege in favor of one who has pos-

session of a movable with the consent of the owner, and incurs expenses in the preservation of it, and that the said party is entitled to reimbursement by the owner or the owner's creditors by preference, under the expressed provisions of section 4 of Act No. 198 of 1918 and section 1 of Act No. 209 of 1926, since the intervener's privilege arose subsequent to the recordation of the plaintiff's chattel mortgage, the mortgage creditor has a superior right to the proceeds of the sale of the Chevrolet coach. We say this particularly in view of the fact that both of these statutes deal directly and especially with the subject under consideration, that is, chattel mortgages and liens on automobiles and the priority thereof. From what we have said it is obvious that we are of the opinion that the exceptions were well founded and should have been sustained."

And, as said by Justice Rogers in Youree v. Limerick, supra: "We are therefore of the opinion that the privilege resulting from the execution and recordation of a chattel mortgage takes precedence over and primes a lessor's lien arising subsequently thereto."

We are likewise of the opinion that the privilege resulting from the execution and recordation of a chattel mortgage takes precedence over the privilege in favor of him who has incurred expenses for the preservation of the property in his possession where such privilege arises subsequently thereto.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from, in so far as it runs against A. Burglass, be and it is amended so as to read as follows:

"It is ordered, adjudged and decreed that there be judgment herein in favor of Abraham Burglass, plaintiff and defendant in reconvention, and against O. K. Storage & Transfer Company, Inc., defendant and plaintiff in reconvention, decreeing the vendor's privilege and chattel mortgage lien of Abraham Burglass to be superior to any lien, privilege or claim of the said O. K. Storage & Transfer Company, Inc., and that, out, of the proceeds of the property sold by the Civil Sheriff, that the said Sheriff shall pay unto Abraham Burglass the sum necessary to satisfy the amount secured by his vendor's privilege and chattel mortgage lien above and in preference to the O. K. Storage & Transfer Company, Inc., and that the privilege of the O. K. Storage & Transfer Company, Inc. shall only strike and affect the said property after satisfaction of the above mentioned vendor's

privilege and chattel mortgage lien of Abraham Burglass."

It is further ordered, adjudged, and decreed that all costs of these proceedings be paid by the O. K. Storage & Transfer Company, Inc., defendant and plaintiff in reconvention.

Judgment amended.