**LAWRENCE v. SUNRISE PETROLEUM CO., Inc.**

**No. 5138.**

Court of Appeal of Louisiana.
Second Circuit.

Nov. 6, 1935.

Isaac Abramson, of Shreveport, for appellant.

R. C. Gamble, of Mansfield, for appellee.

MILLS, Judge.

Brought in the form of a simple action on open account for lumber sold and delivered, generally denied in the answer, the pleadings fail to disclose the real issue, which is whether or not defendant, by holding out H. A. Potter as its agent, rendered itself liable for timber bought by him that it did not order and did not receive.

Plaintiff operated a small sawmill on his farm, near Mansfield, in De Soto parish. Defendant is an oil and gas corporation, with headquarters at Houston, Tex., with Dr. C. R. Berry, president and treasurer, and H. A. Potter, vice president and secretary. It brought in two producing wells on its B. Y. Wemple lease in De Soto parish. The first, begun in March and completed May 1, 1934, was drilled by the company under the direction, until just before its completion, of Sam Guy. The derrick timbers for the well were purchased for the company by Guy and paid for by it. A second well was then drilled by W. K. Williams, under a contract wherein defendant was to furnish the materials. The derrick timbers for this well were also purchased from Lawrence and paid for. There is a dispute as to the person who ordered these timbers. Potter says Dr. Berry bought them on a night visit to Lawrence's place. Lawrence says Potter bought them and that he never saw Berry.

Potter was connected with two other oil companies which drilled on leases adjacent to that of the Sunrise. Of the Bayou Pierre Oil Company he was president and secretary-treasurer, and in the De Soto Oil Company he held the offices of secretary and treasurer. Outside of Potter, it is not shown that the three companies had the same officers. All of the timber sued for in this case, amounting to $223.38, was bought by Potter after completion of the two Sunrise wells, delivered on the leases of the De Soto and Bayou Pierre Oil Companies, and used in the drilling of a dry hole on each.

Reviewing the conduct of the defendant company, we find that it paid for all of the lumber it used, consisting of the two sets of derrick timbers referred to above, and a bill of lumber bought in October by F. M. Smith, then in active charge of its operations. All bills for labor or materials for defendant were paid in cash by Potter, or by draft on Berry, at Houston. The bills of the Bayou Pierre and De Soto companies were paid by Potter's checks on a Mansfield bank. No one seems to have been deceived as to the separate identity of the three companies, except Lawrence. Not only was there no attempt to deceive in this case, but a deliberate effort to enlighten. As soon the derricks were erected, signs were placed on them showing which belonged to the Bayou Pierre Oil Company and which to the De Soto.

Mr. McCrocklin, for the Mansfield Lumber Company, sold lumber and supplies to all three companies. He says that he had no difficulty in keeping the accounts separate. That the separate identity was explained to him by Potter, who told him to keep the accounts separate.

Men working in the field testify that they knew the different companies. W. K. Williams, who contracted the second Sunrise well, plaintiff's witness, says that after its completion, when the first of the other wells was started, he was told by Potter that it was being drilled by a different company.

Potter was the general agent in the field for defendant, with authority to make purchases for it, but the only lumber claimed by Lawrence to have been ordered by Potter specially for the Sunrise was the disputed purchase of the second set of derrick timbers, which were paid for.

Lawrence says, in regard to the purchases covered by the account, that the only person he knew in the transaction was Potter; that he never visited the lease and knew of no other company in the field than defendant. He says that Potter would say, "I want another little bill of lumber," or "we want another derrick"; to send it down and the boys would point out where it was to be delivered. That he thought he was selling to the Sunrise and was induced to extend the credit, because the Sunrise had a producing well. He is mistaken when he says the last bill rendered, in October, for $42.30, showed the whole account. The original filed in evi-

744

dence does not show any amount brought forward or any other balance due. None of his draymen testifies as to where the timbers were delivered, what they were told or what they saw, or whether or not they received a receipt. For that matter, neither does Dr. Berry, nor any other official than Potter, of defendant company.

All payments on the account were made by Potter. The first, of $200, made August 11, 1934, was by check on the De Soto Bank & Trust Company, the maker being the Southern Drilling Company, by H. A. Potter, president. It contains plainly on its face the notation, "on derrick Bayou Pierre Oil Co. No. 1." The second payment, of $30, made August 21st, by similar check, also on its face bears the notation, "lumber, DeSoto Petroleum Co." The next payment, September 6th, by similar check, is for $148.50, indorsed on the face, "DeSoto Petroleum Company." The last credit appears on the account as by cash, $142.30. As a matter of fact, this payment was by two instruments, dated October 3, 1934, $100 by a Southern Drilling Company check, showing no notation, and $42.30 by draft on C. R. Berry, treasurer, at Houston. Despite all this, Lawrence asserts that he had no idea until the first part of 1935 that he was dealing with any but the Sunrise Petroleum Company; that he paid no attention to "this stuff at the bottom of these checks." As the last item sold is dated October 18, 1934, the checks were paid while the account was still running.

Potter's version of the transaction is: "I went to see Mr. Lawrence after No. 2 came in, the Wemple Sunrise Well No. 2, I told him I was in a position to get some other leases down there, I thought I could drill two more wells and I would have to have derricks to drill them. He said he would help me get them. I said I think I can get some money in two or three weeks, he said I will stay with you, I'll stay behind you. I went to work to get the money and he began to put the lumber on the lease. I told him some one would be down there to show him which was the Bayou Pierre and which was the DeSoto Oil Co. lease."

He says he had no authority and no intention to, and did not, purchase the lumber involved for the Sunrise. He is not entirely contradicted in this by Lawrence, who in rebuttal says: "I recall one remark he made about one derrick pattern he wanted sent down there, and he says,—

'some of the boys will be there to show them where to put it. This goes over on the Bayou Pierre lease'. I didn't pay any attention to that Bayou Pierre, Bayou Pierre means a river to me, he didn't say it was any other oil company by the name of Bayou Pierre."

He insists: "I knew the Sunrise had a producing well down there and I was selling to the Sunrise."

Considering the fact that Potter and both the other companies now appear to be insolvent, the position taken by plaintiff is one of sound business policy, if it can be maintained.

After the taking of testimony and before submission of the case for decision, the real issue was joined by a plea of estoppel. In it plaintiff sets out that if defendant company is found to be an innocent party, then it is estopped from denying liability for the reason that "by holding out the said Potter as its agent and putting him in the position where he could cause injury to plaintiff, who acted in good faith, the principle of law would apply that, where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it."

The trial judge overruled the plea of estoppel, but rendered judgment as prayed for in favor of plaintiff, from which defendant has appealed.

■ The legal principle enunciated in the plea of estoppel is correct. Haley v. Woods, 163 La. 911, 113 So. 144.

■ Estoppel is not favored in the law, and is only maintained where the facts relied upon are strictly proven by the pleader. Burglass v. Wright (La. App.) 159 So. 176; Hebert v. Champagne, 144 La. 659, 81 So. 217; Whittington v. Glenmora, 1 La. App. 568.

■ Having gone into the facts at considerable length, we will not repeat them any further than to say that they do not show such a course of conduct or such a holding out by defendant of the agency of Potter as would justify an estoppel. The plea was correctly overruled.

■ But we cannot agree with the finding of the learned trial judge on the merits. We do not think it proven that the lumber was purchased by the defendant. It certainly was not delivered to or used by it. While we cannot say that plaintiff is in bad faith in asserting his belief that

he was selling to the Sunrise, we think it clear the circumstances did not justify that belief. If he did not see differently, it was because he would not see. Certainly there were sufficient facts known to every one else concerned to put on guard a person of reasonable prudence.

The judgment appealed from is accordingly reversed, and judgment is now rendered rejecting plaintiff's demands; he to pay the costs of both courts.