11   433
48   948

## John O. Bartels & A. W. Dana *v.* Their Creditors and the Creditors of Stafford, Bartels & Co.

Insolvents leased a hotel from S. for one year from the 14th January, 1855, for $15,000 per annum, payable in monthly installments of $1,250. In May, 1855, the lease was sold, by order of Court, and S. the lessor, became the purchaser. *Held:* That the purchase of the lease by the lessor extinguished the lease, and the lessor should be put down on the tableau as a creditor of the insolvents only for the sum due at the date of the sale of the lease. For the remaining seven months nothing was due him, as (he being the purchaser) the lease was dissolved by confusion.

Decision in *Cook & Morehouse* v. *Dodge & Johnson*, 6 An. 275, affirmed.

The order for the sale of the lease does not say that the purchaser shall assume the payment of the rent, and no such construction is warranted by implication of law. Neither the forced nor voluntary assignment of a lessee's right of occupation carries with it any such obligation. LEA, J., with whom concurred SPOFFORD, J., dissenting.

There, are, two ways of selling the unexpired term of a lease; one by selling it for a premium subject to the payment of rent to the landlord; the other by selling or assigning the right of occupation without the assumption of rent. The latter is the more frequent, as it rarely happens that the unexpired term of a lease is worth a premium. LEA, J., with whom concurred SPOFFORD, J., dissenting.

Where a lease is offered for sale upon the condition that the purchaser shall assume the payment of the rent, confusion would take place should the lessor, himself, become the purchaser. But where the payment of the rent is not to be assumed, by the terms of the sale, the rights of the lessor who purchases, are not extinguished: he has not acquired any obligation due himself and the price of the purchase, in such cases, is due not to the lessor, but to the principal lessee, or his representatives. LEA, J., with whom concurred SPOFFORD, J., dissenting.

Code 2676, 2677, 2696.

BARTELS
*v.*
CREDITORS.

APPEAL from the Fifth District Court of New Orleans, *Augustin,* J.
*Clark & Bayne,* for Syndic.   *Magne, Mott & Fraser, Race & Foster,*
and *Duncan & McConnel,* for different creditors.

VOORHIES, J.   A provisional tableau of distribution filed by the syndic in
this case has given rise to various oppositions.

1. The claim of *F. S. Slatter* for the sum of $17,705, classed as a privilege
for rent, is opposed by *Edward Turpin,* one of the creditors of the insolvents.
*Slatter,* it appears, leased his property, known as the "City Hotel," to *George
W. Cullom* and *John O. Bartels,* for the term of three years from the 14th of
January, 1852, at an annual rent of $16,200, payable in monthly instalments
of $1,350.   On the 20th of December, 1854, *Slatter* leased the same property
to *James Stafford, John O. Bartels* and *Amos W. Dana* for the term of one
year from the 14th of January, 1855, for the sum of $15,000, payable in
monthly instalments of $1,250.   The lessees under each contract furnished to
the lessors their corresponding promissory notes.   On the 30th of the same
month in which the last contract of lease was entered into, *Bartels* and *Dana*
filed a petition in the Fifth District Court of New Orleans, accompanied with
a schedule or statement of their affairs, in order to obtain a respite for one,
two and three years from their creditors.   *Slatter* was carried on the schedule
thus filed as a creditor of the insolvents for the sum of $3,048 75, as the bal-
ance stated to be due to him on the three last installments of the lease ending
the 14th of January, 1855.   In the proceedings, there is no reference to the
other contract of lease.   On the refusal of their creditors to grant the respite,
*Bartels* and *Dana* made a voluntary cession of their property on the 27th of
February, 1855.   At the syndic's sale in May, 1855, the lease to the insolvents
was adjudicated unconditionally to the lessor, *Slatter,* for the price of $3,000.
*Slatter's* claim for rent was allowed for the entire term of the lease, ending the
14th of January, 1856, to-wit: $15,000, with the lessor's privilege, deducting
therefrom the price of adjudication, to-wit: $3,000.

We are now required to determine, under these circumstances, whether
*Slatter* is legally entitled to be classed on the tableau for the rent of the unex-
pired term of the lease, to be reckoned from the date of his purchase, to-wit:
seven months and a half at $1,250 per month, making an aggregate of $9,375.
We have recently decided a case in which we held, that the purchase of a lease
by the lessor, operated as a dissolution of the contract of lease by confusion,
the qualities of lessor and lessee uniting in the vendee.   It is true, in that case,
the consideration for the transfer of the lessee's rights was expressly stipulated
to be a *premium,* whilst in the present, no such mention is made; but it
appears to us this is immaterial, as the effect in either case must be the same;
the divestiture of the lessee's rights to which the purchaser becomes subroga-
ted.   Let us suppose, for instance, that any other person than the lessor
himself had become the purchaser of the lease, would not such purchaser be
bound not only for the purchase money, but for the rent stipulated to be paid
by his vendor?   Illustrating farther, in a sub-lease, which the law permits the
lessee to make, the rights of the lessor cannot be affected.   "The lessee has the
right to under-lease or even to cede his lease to another person, unless this
power has been expressly interdicted."   C. C. 2696.   In such case the land-
lord's privilege or right of pledge only would be affected.   C. C. 2676, 2677.
What difference then is there between such a conveyance and a forced alienation
of the lease to another person?   As to the legal effect of either *quoad* the

lessor, we think there can be none. We are, therefore, of opinion that the lease in this case was dissolved by the sale to *Slatter*, the lessor. *Slatter* is, consequently, only entitled to recover the following sums with the lessor's privilege, to be classed as such on the tableau of distribution, to-wit : $3,048 75, balance due under the first lease, and $3,875, balance due for five and a half months' rent under the last lease, after having deducted therefrom $3,000, the purchase money for the unexpired term.

2. The claims of several creditors, for supplies as retail dealers, and for services rendered as domestics or servants, classed as privileges, are also opposed by *Turpin*. The controversy in this matter seems to be limited to the question, whether these creditors are entitled to the privileges allowed them by the judgment of the court below, to secure the payment of their respective claims. According to the decision in the case of *Cook & Morehouse* v. *Dodge & Johnson*, 6 An. 275, they are clearly not entitled to be ranked as privileged creditors. We do not think there is any good reason to authorize us to overrule that decision. Unless manifestly erroneous, we think it would be unwise for us to disregard the interpretation of a statute by our predecessors.

The claim of *Sampson & Keene*, classed as a privilege, is also opposed. They claim the vendor's privilege on the price of certain furniture which was sold by them to the insolvents. The proof leaves no doubt on our minds as to the correctness of their claim, which was allowed by the judgment of the court below.

4. The following claims classed as privileges on the tableau are also opposed, to-wit :

Clerk's costs and costs retained.............................. $100 00
Sheriff's costs of sale, advertising, &c., labor, &c.............. 887 70
Notary's fees................................................ 150 00
Appraiser's fees............................................. 100 00

The sheriffs throughout the State are bound, whenever they return a paper or process into court, to endorse thereon the specified items of fees to which they may be entitled. All officers claiming costs or fees are bound, whenever required to do so, to deliver to the person against whom such fees may be charged, an explicit fee bill. Clerks and sheriffs can only demand such fees as are expressly allowed them by law. In the Act entitled "An act to regulate and define costs and fees generally," (Session Acts of 1855, 162,) the only charge in relation to sheriff's fees, left to the discretion of the court, is that for keeping personal property and slaves in certain cases. The fees which notaries may demand, are also defined and regulated by that Act. As none of the claims thus classed appear to have been established by the requisite proof, it is clear that they cannot be allowed. But considering the admissions in the record, which may have misled the parties in this regard, we think it would be inequitable to conclude them. Justice therefore, requires that the cause should be remanded to determine the matter legally.

5. The claim of *J. Stafford* for $6,300, classed as an ordinary debt, is also contested. He was, as we have seen, one of the joint lessees under the second lease, and bound *in solido* with his partners for the rent. He was also bound for the debts contracted for the hotel after he became a partner, about July, 1853, as shown by the testimony of *E. Barnett*. Under that lease we have allowed *Slatter* $6,250 as rent, with the lessor's privilege. Under these circumstances, we do not think *Stafford* should be permitted to partake in the

BARTELS
*v.*
CREDITORS.

fund of the estate until the payment of the other creditors. For the same reason, we think the claims of *J. Stafford & Co.* for $3,502 and $274 41, classed as ordinary debts, should also be disallowed, so far as the same may be prejudicial to the other creditors. It is clear that the rights of the creditors of a partnership cannot be affected by equities which may exist between the partners.

6. We do not think there is any material error to the prejudice of the creditors in the amount allowed as commissions to the provisional syndic and syndic by the judgment of the court below.

It is, therefore, ordered and decreed, that the judgment of the court below be avoided and reversed, that *F. S. Slatter* be classed on the tableau of distribution as a creditor for the sum of six thousand nine hundred and twenty-three dollars and seventy-five cents, with interest thereon, according to law, with the lessor's privilege, being the balance due him for rent after deducting the sum of $3,000, the purchase money of the lease, that the claims of the creditors for supplies as retail dealers, and for services as domestics or servants be disallowed as privileges, and the same be classed as ordinary debts, that the claims of *J. Stafford* and of *J. Stafford & Co.*, classed as ordinary debts, be rejected, that the cause be remanded to determine the amounts to which the clerk, sheriff, notary and appraisers may be respectively entitled, that the judgment in other respects be affirmed, and that the costs of appeal be borne by the appellees against whom the judgment is reversed, and by the appellants where the judgment is affirmed in favor of the appellees.

LEA, J., (with whom concurred SPOFFORD, J.) dissenting. I concur in the opinion of the majority of the court, as delivered by Mr. Justice VOORHIES, except so far as it relates to the construction of the obligation assumed by *S. F. Slatter*, in the purchase of the lease at the Sheriff's sale.

In the opinion of the court, "the contract of lease was extinguished by the sale of it to the lessor," on the ground, "that having become the purchaser of the lease he, the lessor, united in himself the qualities of lessor and lessee."

The facts of the case, so far they are essential to the illustration of the question presented, are as follows: On the 2d of May, 1855, an order of court was granted for the sale of *all the property* belonging to the insolvents. By virtue of the order, the Sheriff offered for sale, on the 15th of May, the unexpired term of the lease made by *Slatter* to the insolvents, having then seven and a half months to run; at which sale, *Slatter* himself became the purchaser for the sum of $3000. The question is, whether at this sale, *Slatter* assumed the payment of a monthly rent of $1,250, in addition to a premium of $3,000; or whether the $3,000 was a bid made for the right of occupation of the hotel for the unexpired term of the lease. The test suggested in the opinion of the court, by which this question should be solved, is certainly a fair one. What would have been the obligation of any other purchaser but the lessor, at such a sale? For it would be contrary to all rules of equitable construction to impose upon *Slatter* a *different* obligation from that which would have been assumed by any other bidder. Now the order of sale does not say that the purchaser shall assume the payment of the rent; the lease does not appear to have been sold subject to any such condition, and it is not so stated in the adjudication. No such construction is warranted by implication of law. Neither the forced nor the voluntary assignment of a lessee's right of occupation, carries with it any such obligation.

It is not necessary to embarrass the inquiry with speculations as to the probable rights of a lessor in a case where his contract was infringed by such an arrangement. In the case at bar, no such question is presented; the lessor having acquiesced in the sale by becoming himself the purchaser. There are two ways of selling the unexpired term of a lease; one by selling it for a premium, subject to the payment of the rent to the landlord, the other by selling or assigning the right of occupation without the assumption of the rent. The latter is the more frequent way of selling or assigning it, since it rarely happens that the unexpired term of a lease is worth a premium. The case of a sub-lease is a familiar illustration of one form of this latter mode of assignment. The sub-tenant has nothing to do with the original contract of lease. He is bound only for the payment of the rent which he stipulates to pay as sub-lessee; and whatever may be the rights of the landlord to cause the lease to be cancelled for the non-payment of the rent by his tenant, he can in no case hold the sub-tenant liable for the payment of the rent under a contract to which he is not privy. Even the lessor's privilege would not extend to the effects of the under-lessee, except so far as the latter might be indebted to the principal tenant. C. C. 2676. 6 Rob. 294.

Now, it must be conceded, that where a lease is offered for sale upon the condition that the purchaser shall assume the payment of the rent, confusion would take place should the lessor himself become the purchaser, for the reason that the relation of debtor and creditor would be united in the same person; and this would be in accordance with the decision lately rendered in the case of *Young* v. *Cambot ;* and for the like reason, where the payment of the rent is *not* to be assumed by the terms of the sale, the rights of the lessor, who purchases under such circumstances, are not extinguished. He has not, by the purchase, acquired any obligation due to himself; the price of the purchase in such case is due not to the *lessor*, but the principal *lessee* or his representatives. This doctrine was fully recognized in the case of *Bach & Co.* v. *Cottingham*, recently decided.

In that case, as in the case at bar, a judicial sale was made of the unexpired term of a lease, the purchaser paying a fixed sum therefor. Before the expiration of the lease, the property was destroyed by fire. The lessor, who had received the whole of his rent up to the expiration of his lease, was sued both by the purchaser of the lease and the seizing creditors of the principal lessee, for the reimbursement of the overpaid rent; the former contending, that by the terms of his purchase, he had acquired all the rights of the original lessee. But the court held, that the right to reimbursement had not passed to the purchaser of the unexpired term of the lease, but remained vested in the original lessee and, as such, was liable to seizure by his creditors. It is clear, therefore, that the purchaser of the unexpired term of the lease, was not subrogated to the contract of lease with its rights and corresponding obligations. He became not the assignee of the contract, but he acquired the right of occupation under the contract. There is nothing in the nature of the proceedings for a sale, nor in the presumptions arising from the facts of this case, which would indicate the intention or the expectation that the purchaser was to pay a premium on the lease. Had such been the intention of the syndic at the time the order of sale was applied for, it should have been clearly expressed.

But the facts of the case absolutely repel any such presumption. It appears to me manifest, that no person could be expected to pay a premium for the unexpired lease of a hotel, after the business season had nearly expired, and at a time when the season was approaching at which many of the large hotels of the city are closed from inability to pay expenses, and when those which are not closed, are kept open at a charge to the proprietors; and yet it is contended, that a purchaser would, under the circumstances, not only have assumed to pay a monthly rent of $1,250, but would be liable for a premium of $3,000 more for the privilege of so doing. As respects *Slatter* himself, such a conclusion is not less improbable, for having his accruing rent to the extent of $9,375 secured to him, by his privilege of lessor, we are to conclude that he offered a premium of $3,000 more for the purpose of extinguishing his claim, thereby making a voluntary sacrifice of the whole of it. A rule of interpretation which leads to such a conclusion, cannot, in my opinion, correctly illustrate the intentions of the parties.

I think that *Slatter*, after being charged with the amount of his bid, should be placed on the tableau, as a creditor for the rent accruing until the expiration of the lease.