158 So.2d 837 (1963)
L. Kent MORRISON
v.
Lee Roy FAULK.
No. 1152.
Court of Appeal of Louisiana, Fourth Circuit.
December 2, 1963.
Rehearing Denied January 6, 1964.
Writ Refused February 14, 1964.
*838 Garrett & Carl, Clifton S. Carl, New Orleans, for intervenor-appellant.
James J. Morrison and Willaim W. Messersmith, III, New Orleans, for plaintiff-appellee.
Before YARRUT, SAMUEL and HALL, JJ.
HALL, Judge.
This appeal involves a contest between the holder of a vendor's lien and chattel mortgage and the holder of a landlord's lien and privilege relative to the proceeds of a judicial sale.
The basic facts are undisputed. L. Kent Morrison, plaintiff in suit, leased certain premises in the City of New Orleans to Lee Roy Faulk, and upon default of Faulk for nonpayment of rent, Morrison sued and obtained judgment against him for $36,100.00 which amount included $2,700.00 past due rent and rental under the acceleration clause of the lease for the remainder of the term of the lease. This judgment recognized Morrison's landlord's lien and privilege on the movables situated in the leased premises, and ordered these movables sold to satisfy the judgment.
Thereafter, National Cash Register Company, the appellant, holder of a vendor's lien and chattel mortgage on several cash registers situated in the leased premises intervened in the suit and prayed for a separate appraisement and sale of the cash registers.
By virtue of a writ of fieri facias issued in accordance with the judgment obtained by the landlord, the right of occupancy of the leased premises together with the movables situated therein were in due course sold at public auction by the Civil Sheriff for the Parish of Orleans who retained the proceeds of the sale in his hands.
Thereupon, the Intervenor, National Cash Register Company, filed a rule against all interested parties to rank the privileges on the proceeds of the sale. Following a hearing on this rule the District Judge rendered judgment decreeing that the landlord's lien was superior to that of the National Cash Register Company and all other claimants and ordered the proceeds of the sale turned over to the landlord. National Cash Register Company prosecutes this appeal from that judgment. No other claimants to the fund have any interest in the appeal.
It is admitted by National Cash Register Company that the property sold by it to the defendant tenant was placed in the leased premises prior to the recordation of its chattel mortgage. Therefore, in the absence of any other consideration, the lessor's privilege would prevail. See White Company v. Hammond Stage Lines, 180 La. 962, 158 So. 353; Youree v. Limerick, 157 La. 39, 101 So. 864, 37 A.L.R. 394. In addition, it is clear that a lessor's privilege is superior to a vendor's lien on property in the possession of the vendee. See LSA-C. C. Art. 3263.
*839 However, appellant contends that plaintiff Morrison's lessor's privilege was extinguished by confusion and also by operation of the Deficiency Judgment Act.
Appellant contends that Morrison lost his lessor's privilege by becoming the purchaser of the lease at the sheriff's sale. The reasoning behind this contention is that when the lessor bought the lease he became both the obligor and the obligee on the same obligation and thus the lease was extinguished by confusion (See LSA-C.C. Art. 2217) and the lessor's lien, being ancillary to and dependent upon the continued existence of the lease, was extinguished with it. Appellant further argues that since the lease was the first item adjudicated by the sheriff (the property having been divided into, and sold separately by, lots) the lessor's privilege on all the rest of the property under seizure then remaining unsold (including the cash registers) was extinguished by the confusion which took place at the moment of adjudication of the lease to the lessor. Appellant bases its argument on and relies upon the decision of the Supreme Court in Ranson v. Voiron, 176 La. 718, 146 So. 681 which we shall consider later.
There is a distinction recognized in our jurisprudence between the sale of a lease or the unexpired term thereof and the sale of a mere right of occupancy of the leased premises. When the lessor in the instant case obtained a judgment against the lessee for the amount of rental due for the entire unexpired term of the lease, the right of occupancy of the leased premises for the remainder of the term (but not the lease itself) became an asset of the lease subject to sale. Consequently the property of the lessor which was seized and sold by the sheriff by virtue of the writ of fieri facias could not and did not include the lease itself but only the right of occupancy of the leased premises. The lessor could not and did not purchase anything more than the right of occupancy.
The distinction recognized in our jurisprudence between the sale of a lease, or the unexpired term thereof, and the sale of the right of occupancy is that the purchaser of a lease or the unexpired term thereof becomes obligated to pay the rent stipulated in the lease, while the purchaser of a mere right of occupancy does not take upon himself or assume the obligation to pay rent. See Villavaso et al. v. Their Creditors, 48 La.Ann. 946, 20 So. 167. This distinction is also noticed in Walker v. Dohan, 39 La.Ann. 743, 2 So. 381; Bartels and Dana v. Their Creditors et al., 11 La.Ann. 433; Succession of Howard, 2 Orl.App. 163; Marfese v. Nelson et al., 10 Orl.App. 288.
However, it would seem to us that a purchaser of the right of occupancy does assume by such purchase all the obligations, other than the obligation to pay rent, which are imposed on the lessee by law or by the terms of the lease, such as for example the obligation to use the premises according to the use for which they were intended by the terms of the lease, the obligation to commit no waste, the obligation to make certain repairs, etc. For a list of such obligations see LSA-C.C. Art. 2710 et seq.
It follows that when a lessor becomes the purchaser of the lessee's right of occupancy, as in the instant case, the qualities of debtor and creditor do not become united in the same person quo ad payment of the rent but do become united in the same person quo ad the other obligations of the lease.
We entertain the view that when, as in the instant case, the lessor obtained judgment against the lessee for the amount of rental due for the entire remainder of the term of the lease the obligation of the lessee to pay rent in accordance with the provisions of the lease became merged in the judgment; the obligation to pay the judgment became substituted for and took the place of the obligation to pay rent and the lessor's privilege which secured payment of the rent was transferred to and became security for the payment of the judgment.
*840 For the foregoing reasons we are of the opinion that the lessor's privilege on the other movables under seizure was not extinguished by confusion or otherwise as a result of the landlord's purchase of the right of occupancy, such privilege having become security for the payment of the judgment. However the right of occupancy was extinguished by confusion, and since the right of occupancy was all that remained of the lease, the lease (but neither the judgment nor the lessor's privilege) was thereby extinguished.
We do not believe that our views are in anywise in conflict with the holding in Ranson v. Voiron supra relied upon by appellant. The facts in that case are similar to the instant case in all respects except one. In that case the landlord obtained a judgment against the tenant for the amount of rental due for the remainder of the unexpired term of the lease. A fi. fa. was issued and the movables belonging to the lessee situated in the leased premises and also the right of occupancy of the leased premises were seized and sold by the sheriff separately by lots. A contest arose between the landlord and the holder of a chattel mortgage over the proceeds of the sale. When it developed that the chattel mortgage had not been recorded in time to prime the lessor's privilege the holder of the chattel mortgage made the contention that the landlord's lien had been extinguished by confusion because the landlord had purchased the right of occupancy at the sale. The only difference between the facts in that case and the facts in the case before us is that the sheriff sold all of the other lots of the property under seizure before he adjudicated the right of occupancy to the landlord, while in the instant case the right of occupancy was the first item sold.
The Court held in that case, as we do here, that the lease came to an end when the lessor purchased the lessee's right of occupancy. The Court did not discuss the question of the effect of the purchase on the lessor's lien but contented itself with saying that the extinguishment of the lease did not occur until the lessor had enforced his lien by the sale of the other property under seizure and that such cancellation did not have the retroactive effect of destroying the lessor's lien on the property which had already been sold. We go further by holding that the cancellation of the lease had no effect whatever on the lessor's lien.
It is true that the language used by the court in Voiron gives rise to an implication that the cancellation of the lease destroyed the lessor's lien but the court did not so hold. Basing its argument on this implication, appellant would have us hold that if the landlord becomes the purchaser of the right of occupancy before the other items of property under seizure are tried and adjudicated by the sheriff the lessor's lien on the then unsold items is extinguished by confusion. Voiron does not hold this, and we do not feel bound by any implications contained in the language of the court.
Appellant's second contention is that since the right of occupancy was sold without appraisement, the Deficiency Judgment Act (LSA-R.S. 13:4106, 13:4107. See also LSA-C.C.P. Arts. 2771 and 2723) extinguished the debt so as to defeat the lessor's privilege on the items of property sold after adjudication of the right of occupancy.
Whether the right of occupancy was appraised by the appraisers appointed by the sheriff is a matter in dispute between the parties hereto, but whether or not it was appraised we think is immaterial to a decision in this case. For the Deficiency Judgment Act applies only in those instances where there has been a waiver of appraisement by the debtor and the creditor takes advantage of such waiver. See LSA-R.S. 13:4106. Here it is not shown that there was a waiver of appraisement by the lessee debtor or that he did anything which might be considered as a waiver, and a fortiori it is not shown that the lessor creditor took advantage of the waiver or did anything to prevent an appraisement. The record leaves us with the impression that if there was no formal appraisement it was due *841 solely to an oversight on the part of the sheriff's office.
In our opinion the Deficiency Judgment Act has no application to this case, and furthermore even if it were applicable, it would not prevent the lessor creditor who held a right of pledge (LSA-C.C. Art. 2705) as well as a lessor's privilege on the property under seizure, from proceeding against the other property under seizure since all of it had been formally appraised except perhaps the right of occupancy. The second paragraph of LSA-R.S. 13:4106, as amended, so states:
"If a mortgage or pledge affects two or more properties * * * the judicial sale of any property so affected without appraisement shall not prevent the enforcement of the mortgage or pledge in rem against any other property affected thereby."
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.