343 So.2d 1138 (1977)
ACADIANA BANK, Plaintiff-Appellant,
v.
Kimball Aubrey FOREMAN et al., Defendants-Appellees.
No. 5800.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1977.
Rehearing Denied April 5, 1977.
Writ Granted June 3, 1977.
*1139 Pucheu & Pucheu by Jacque B. Pucheu, Jr., Eunice, for defendant-intervenor-appellant.
Devillier & Ardoin by Anthony J. Fazzio, Eunice, for plaintiff-appellee.
Before WATSON, GUIDRY and FORET, JJ.
FORET, Judge.
On January 8, 1976, Acadiana Bank (hereinafter referred to as Acadiana) filed a petition for executory process against Kimball Aubrey Foreman and his wife (hereinafter referred to as the Foremans), under which a writ of seizure and sale was issued foreclosing on certain chattels of the Foremans. On April 7, 1976, the property seized was sold, and the proceeds of the sale were put into possession of the Sheriff of St. Landry Parish. On March 18, 1976, a petition of intervention was filed by Wilson J. Moosa (hereinafter referred to as Moosa), wherein intervenor claimed that his lessor's lien was superior to that of the chattel mortgagee, Acadiana, as his lessor's lien was recognized in a judgment rendered on February 17, 1976. Judgment herein was rendered on August 3, 1976, in which the trial court held that:
" . . . after January 1, 1975, the chattel mortgage held by Acadiana Bank primed the lessor's lien of Wilson J. Moosa, thereby entitling Acadiana Bank to receive the proceeds of the Sheriff's Sale. . ." (Tr. pg. 83)
From such judgment intervenor Moosa has filed this appeal.
Prior to September, 1974, Moosa leased certain premises located in Eunice, Louisiana, to a Mrs. Doty. The term of the lease, which was unrecorded, terminated on December 31, 1974. Prior to the expiration of such lease, defendants herein, the Foremans, purchased from Mrs. Doty the right of occupancy to the leased premises and all of her movables located therein. On or before September 18, 1974, the Foremans *1140 occupied the leased premises. On that date the Foremans executed a written lease with Moosa, which lease was recorded on September 20, 1974, the term of which commenced on January 1, 1975. (Court # 2; Tr. pg. 63-66) On that same date, September 18, 1974, the Foremans executed:
(1) a collateral chattel mortgage on the movables located in the leased premises, which chattel mortgage was recorded October 3, 1974 (Court # 1, Tr. pg. 61-61A) and
(2) a collateral mortgage note in the amount of $17,000.00, which note was paraphed and identified with a chattel mortgage, and which was delivered to Acadiana[1] and,
(3) a $12,000.00 hand note, a provision of which stated that the note
"and any extension or renewal thereof and any and every debt, liability or other obligation, direct or contingent, due or to become due, whether now existing or hereafter arising, by the undersigned, or any of them, to the said ACADIANA BANK, up to the sum of FOUR HUNDRED AND FIFTY THOUSAND DOLLARS ($450,000.00), are and the same shall be secured by the pledge of the securities or property listed and described as follows, vis: collateral chattel mortgage in the amount of $17,000.00." (Bank-1; Tr. pg. 68)
On August 14, 1975, the unpaid balance of the $12,000 note having been reduced to $5,000 and the Foremans wishing to pay smaller monthly installments, Mrs. Foreman re-negotiated and executed a $5,000 hand note. (This note was not filed in the record.) By October 6, 1975, the $5,000 note had been fully paid, and it was returned to the Foremans. On October 7, 1975, Mr. Foreman executed a $6,234.20 hand note, which note contained the same provision of pledge as does the $12,000 note. (Intervenor-3; Tr. pg. 43) (This is the note upon which the petition for executory process was filed.) At all times herein, the collateral mortgage note remained within the possession of Acadiana.
Intervenor-appellant Moosa alleges the following as errors of the trial court:
1. The ruling of the trial court as to the ranking of the lessor's lien and chattel mortgage;
2. The ruling of the trial court as to the efficacy of the pledge of the $17,000 negotiable promissory note, as to the date of its effectiveness, and, in particular, as to its securing the $6,234.20 hand note.
3. In applying the New Orleans Silversmith's decision rather than Odom v. Cherokee Homes, Inc., 165 So.2d 855 (La.App. 4 Cir. 1964); writs refused 167 So.2d 677.

I.

RANKING OF LESSOR'S LIEN AND CHATTEL MORTGAGE
For the payment of rent, the lessor has a right of pledge, a privilege, and a lien upon the movables of the lessee located within the leased premises. Such right exists as of the first date of the term of the lease and terminates as of the last date of the term of the lease. C.C. Art. 2705; In Re Ruston Creamery, Inc., 190 La. 681, 182 So. 715 (La.1938); Comegys v. Shreveport Kandy Kitchen, 162 La. 103, 110 So. 104 (1926); Morrison v. Faulk, 158 So.2d 837 (La.App. 4 Cir., 1963); writ refused, 245 La. 643, 160 So.2d 229; Thigpen v. Wall Printing Corp., 145 So. 714 (La.App. 2 Cir., 1933); Hardie v. Wright, 12 La.App. 52, 125 So. 312; (La.App., Orl.1929).
A chattel mortgage takes effect as against the world as of the date of its filing or recordation. Prior thereto, such legal instrument has effect only as between the parties thereto. LSA-R.S. 9:5354.
The issue of the ranking of the lessor's lien and the chattel mortgage in cases *1141 practically identical to the one at bar has been firmly and definitively decided by the Louisiana Supreme Court in the case of In Re Ruston Creamery, Inc., supra, and by the Louisiana Supreme Court's refusal to grant writs in the Orleans Appeals case of Hardie v. Wright, supra. In Ruston, one R. B. Knott had leased a building to C. A. Tooke and J. E. Reynolds. (Tooke and Reynolds subsequently formed a corporation known as Ruston Creamery, Inc.) The initial lease was for a period of five years beginning August 1, 1927. Ruston Creamery, Inc. took over the creamery on February 8, 1932, approximately six months before the expiration of the term of the prior lease given by Knott to Tooke and Reynolds. Ruston Creamery subsequently leased the building from R. B. Knott for a period of five years to begin at the expiration of the prior lease i. e. August 1, 1932. At the time of the execution of the second lease the machinery and fixtures were in the building where they remained until they were sold by receivers (Ruston Creamery, Inc. having been placed in receivership). The lease from R. B. Knott to Ruston Creamery was filed and recorded on April 1, 1932. On April 27, 1932, Ruston Creamery, Inc. executed chattel mortgage notes to its own order for $10,000 secured by a chattel mortgage on all the machinery and equipment in the building, which mortgage was filed and recorded on that same date. Also on that date, that is, April 27, 1932, the notes and chattel mortgage were transferred to T. L. James & Company, Inc. The question presented during the receivership was which of these privileged claims, R. B. Knott's landlord's lien and privilege or T. L. James & Co.'s chattel mortgage privilege would be given preference or priority over the other. The Court noted, in giving priority to the chattel mortgage, that while the lease to Ruston Creamery was executed on April 1, 1932, it did not take effect, nor did the term begin until August 1, 1932. Therefore at the time the chattel mortgage was given, the term of the lease had not begun, and the tenant had not taken possession under the new lease. The Court then cited Hardie v. Wright, supra, wherein the Supreme Court had refused to grant writs, and quoted the following from Hardie's page 314:
"The existence of a landlord's lien presupposes a landlord and a tenant. To construe that this relation existed between the owner of the property and Mrs. Hickox when the mortgage was granted is to argue that the owner sustained this relation to two individuals at the same time with reference to the same property, for Mrs. Mallon's lease had not expired. Mrs. Hickox was certainly not a tenant of the owner. She was in the house by sufferance and could have been ejected at any time. The fact that she subsequently became a tenant could not have retroactive effect. It is true that when she granted the chattel mortgage she had contracted to occupy the place as a tenant, thus indicating her intention to create the relation of landlord and tenant. But the landlord's lien is not created by intention, nor by contract, in the sense that the obligation and privilege of landlord and tenant cannot be created by convention in advance of the actual establishment of the relation. In other words, it is not competent for individuals to stipulate that a lease shall begin at some time in the future and the landlord's lien shall have effect immediately."

II

EFFICACY AND EFFECTIVE DATE OF THE PLEDGE OF THE $17,000.00 NEGOTIABLE PROMISSORY NOTE
Although "all pledges may be made by private writing of any kind if only the intention to pledge be shown in writing. . .", the transfer of possession of a negotiable note to a pledgee in good faith is the only formality required to pledge such an instrument. C .C. Art. 3158; Wallace v. Fidelity National Bank, 219 So.2d 342 (La. App. 1 Cir., 1969), writ refused 253 La. 1083, 221 So.2d 517; Baker Bank and Trust Co. v. Behrnes, 217 So.2d 461 (La.App. 1 Cir., 1968). By "good faith" is meant that the pledgee did not know, and should not have *1142 known, of a defective title in the pledgor. Rex Finance Co. v. Cary, 145 So.2d 672 (La.App. 4 Cir., 1962), affirmed 244 La. 675; 154 So.2d 360 (La.1963).
In this case a valid pledge of a negotiable promissory note was made. Defendants delivered possession to the plaintiff. The plaintiff was in good faith. Its officer witnessed execution of the promissory note which was delivered (pledged) to plaintiff, and further the promissory note contained language to the effect that it was to "be used for collateral purposes".
By the execution of the $5,000 hand note, the pledgee lost none of its rights as a mortgagee. Such was not a novation, for a novation requires specific intent, and cannot be presumed. Novation must result from the terms of an agreement or from the full and final discharge of a debt. The execution of the $5,000 hand note and the surrender of the $12,000 hand note was but a refinancing of the latter note. Rex Finance Co. v. Cary, supra.
Although the original $12,000 obligation had been fully paid, the execution of the $6,234.20 was but a new loan, secured by the pledge of the $17,000 collateral mortgage note and the chattel mortgage. As the collateral mortgage note had always remained within the possession of plaintiff-pledgee and as such instrument provided for the securing of additional loans, the privilege of the plaintiff-pledgee was effective as of the date of the original pledge. C.C. Art. 3158; New Orleans Silversmiths, Inc. v. Toups, 261 So.2d 252 (La.App. 4 Cir., 1972); writ refused 262 La. 309; 263 So.2d 47.

III

SILVERSMITHS CASE AS THE CONTROLLING CASE
The facts of this case are almost identical to those of New Orleans Silversmiths v. Toups, supra. In both cases a negotiable promissory note was executed and delivered (pledged) but once; loans were renewed by execution of new notes; a privilege was created between the date of pledge and of execution of renewals or new loans. Citing Civil Code Article 3158 the court correctly held that the mortgagee's privilege, for the total amount of loans secured by the pledge, outranked that of the intervening creditor.
This case is readily distinguishable from that of Odom v. Cherokee Homes, Inc., supra. In the latter case, after the initial pledge of the negotiable promissory note, a transaction was consummated by which the loan was fully paid and the pledged instrument was delivered to another party. Citing Civil Code Article 3158, the court ruled that the original debt was fully extinguished and that the promissory note was reissued or repledged, such that the collateral mortgage primed only those obligations arising subsequent to the date of reissuance.
For the foregoing reasons the judgment of the trial court is affirmed. All costs of this appeal are assessed against intervenor-appellant.
AFFIRMED.
WATSON, J., dissents and assigns written reasons.
WATSON, Judge, dissenting:
This dispute over the proceeds of the sale of certain chattels is between the Acadiana Bank, which holds a recorded chattel mortgage, and Moosa, who claims a lessor's privilege.
Certain facts are clear and undisputed. On September 18, 1974, or a few days earlier, the Foremans occupied and leased the premises from Moosa under a verbal lease, the rent being $160 per month. (TR. 39-40) The chattels were in the leased premises on that date and had been for some time. This fact was well known to the bank when it took the chattel mortgage, which recites "Property located at 600 W. Laurel Ave. known publicly as `Frostop', Eunice, St. Landry, Louisiana." (TR. 61) On September 18, 1974, the Foremans and Moosa executed a written lease, recorded September 20, the term of which began on January 1, *1143 1975. On September 18, the Foremans also executed a collateral chattel mortgage in favor of the bank, recorded October 3, 1974. The lessor's privilege attached as of September 18 and primed the chattel mortgage recorded October 3. Morrison v. Faulk, 158 So.2d 837 (La.App. 4 Cir. 1964) writ refused 245 La. 643, 160 So.2d 229.
Aside from certain questions concerning the collateral mortgage note and the subsequent hand notes, the basis for the trial court's decision in favor of the bank is that Moosa lost his lessor's privilege because the term of the written lease did not begin until January 1, 1975. I do not agree. The chattels were on the leased premises prior to recordation of the chattel mortgage. Although the lease between the Foremans and Moosa changed from oral to written form and the rental changed, the parties remained the same, the lessor-lessee relationship continued, and the chattels were never removed from the premises. Both the oral and written leases were entered into at the same time by Moosa and the Foremans and constituted parts of a single agreement, the entire substance of which was formulated and agreed between the parties at the inception. LSA-C.C. arts. 2670, 2684. It is inequitable to hold that the chattel mortgage primes the lessor's privilege. See the concurring opinion of Justice Rogers in Youree v. Limerick, 157 La. 39, 101 So. 864 (1924).
The majority feels bound by In re Ruston Creamery, 190 La. 681, 182 So. 715 (1938). In the present case, the relationship of lessor-lessee came into existence between Moosa and Foreman prior to the granting of the chattel mortgage; in the Ruston Creamery case it is not clear that this relationship ever existed between Knott, the lessor, and the creamery corporation, the lessee, until after the corporation gave a chattel mortgage on the machinery and equipment in the building. The building had been under lease previously to Tooke and Reynolds, who formed the creamery corporation, but it is not certain that the lease was transferred to the creamery corporation or that the corporation ever occupied the status of lessee of the building prior to the existence of the chattel mortgage. This precise distinction is pointed up by the case of Hardie v. Wright, 12 La.App. 52, 125 So. 312, writ den., on which the Supreme Court based its opinion in Ruston creamery. See 182 So. 716.
Therefore, Moosa's privilege primes the chattel mortgage, and he should be paid by preference and priority over the bank. To hold otherwise is to defeat the fundamental civil law institution of lessor's privilege in favor of the chattel mortgage, a ubiquitous and sometimes iniquitous off-spring of the common law.
I respectfully dissent.
NOTES
[1] The note contained language to the effect that it was "to be used for collateral purposes and may be negotiated and re-negotiated without further authentic act". (Intervenor-2; Tr. pg. 42)